[L. A. No. 17142. In Bank.—February 29, 1940.]

I. O. SUTPHIN, Respondent, v. FREDERICK A. SPEIK, Appellant.

John W. Preston, Wood, Crump & Rogers, Crump & Rogers and John Perry Wood for Appellant.

Leland J. Allen for Respondent.

GIBSON, J.—This is an action to recover royalties due under an assignment of a participating royalty interest in an oil and gas lease. As will presently appear, a judgment en-

tered in a prior action between the same parties has determined the issues involved in this case.

In 1926 the California Petroleum Corporation leased property consisting of two small lots in Huntington Beach, California (designated as lots 12 and 14), to C. K. Cole as lessee, reserving a royalty of 17½ per cent. Cole assigned the lease to his wife, who on January 7, 1927, assigned to plaintiff Sutphin a royalty interest described as: "A participating royalty interest of Five per cent (5%) of the gross total production of all oil, gas and other hydrocarbons produced, saved and sold from said well on said premises, or any substitute well therefore . . ." Subsequently, in June, 1928, the Coles assigned the entire lessee's interest to defendant Speik, excepting therefrom landowner's royalty, and royalties theretofore sold.

At the time the assignment to plaintiff was made, a well, designated as number 3, was being drilled, which later went into production. In October, 1932, well number 3 and its equipment were destroyed by fire, and defendant drilled another well in its place, using part of the original hole and casing. This well was numbered 3A and went into production in August, 1933. In October, 1933, well number 4, located some fifty feet from number 3A, was completed, and both wells are now producing.

Plaintiff Sutphin brought his first action against the defendant Speik on October 27, 1933, to recover royalties then due under his 5 per cent participating royalty interest. Judgment was rendered in plaintiff's favor on April 5, 1934, in the sum of $6,388.82 and interest. Appended as an exhibit to the complaint in the present suit are the findings and judgment of the court in the original action. The material findings are as follows:

That plaintiff by written assignment for valuable consideration acquired a 5 per cent interest in the total production of oil and gas from lots 12 and 14 under the oil lease between the California Petroleum Corporation and Cole.

That at the time defendant received his assignment of the lease he had knowledge of the 5 per cent interest previously assigned to plaintiff.

That the last well (number 4) "produces from the same zone and pool as said redrilled well number 3".

That "The plaintiff is now and ever since the 7th day of January, 1927, has been the owner of said five per cent

of the total production of oil, gas and other hydrocarbons produced, saved or sold from said premises, and of the moneys derived from the sale of said five per cent of said total production.''

In its conclusion of law the court declared, among other things, that ''plaintiff is entitled to judgment declaring him the owner of five per cent of the total production of oil, gas and other hydrocarbons produced, saved or sold from lots 12 and 14 . . . whether or not same is produced from one or more wells upon said premises''.

The court adjudged plaintiff to be the owner of 5 per cent of the total production of oil and gas from said lots 12 and 14, ''whether same is produced from one or more wells upon said premises, and as such owner plaintiff is entitled to receive all moneys derived from the sale of said five per cent of the total production . . . from said lots 12 and 14''.

Defendant Speik appealed. The judgment was affirmed by the District Court of Appeal, Second Appellate District, Division One, and a hearing was denied by this court. (*Sutphin* v. *Speik,* 15 Cal. App. (2d) 516 [59 Pac. (2d) 611].) The judgment became final and was satisfied as to the royalties then adjudged to be due. In affirming the judgment, the opinion of the District Court of Appeal, after summarizing the facts, stated that it was the defendant Speik's contention that the evidence was insufficient to support the finding of indebtedness, the finding that plaintiff was the owner of a 5 per cent interest in the total production from the property, and the finding that well number 4 produced from the same zone and pool as well number 3. The court rejected this contention, and upheld the judgment.

The present action was filed October 29, 1936, to recover royalties accruing after the entry of the judgment, and was grounded on the rights adjudicated by that judgment. Defendant pleaded as his chief defense that well number 4 does not produce from any sand or oil deposit underlying the property but was drilled as a ''whipstock well'' diagonally into oil producing sand under the Pacific Ocean, more than 2,000 feet from the property, and that well number 4 therefore produces from sands and oil deposits which do not extend beneath these lots.

At the trial defendant made an offer to prove that a royalty was being paid to the State of California from the production of wells number 3A and 4 by virtue of an agree-

ment permitting production from state land under the ocean. The court excluded the offered evidence.

Counsel for plaintiff offered in evidence, among other things, Speik's opening brief and petition for hearing in the first case, and these were admitted for the limited purpose of showing similarity of contentions raised in the two actions.

It was stipulated by defendant that it was the contention of defendant in the former trial that plaintiff Sutphin had no interest in either well number 3A or 4.

The trial court in the present action made findings which reviewed the prior proceeding, and then found as follows:

That plaintiff has not received his 5 per cent royalty on oil and gas produced from wells 3A and 4 since entry of the former judgment.

That no wells other than 3A and 4 have been drilled and that "the location of said wells both above and below the surface of the ground is the same at this time as at the time the trial was had in said action and both are producing from the same sand as at the time of said former trial".

That wells 3A and 4 produce from the same zone and pool.

That it is immaterial whether they are "whipstock wells" because of the doctrine of *res judicata* and that all of the defenses here urged existed at the time of the former trial.

Judgment accordingly went for the plaintiff in the sum of $31,932.54 together with interest. Defendant Speik brought this appeal.

Three weeks prior to the commencement of the present action Speik instituted a quiet title suit against Sutphin seeking a determination of rights and also a declaratory judgment in respect to the lease and assignment. That action raises substantially the same issues as those presented in the present action by Sutphin against Speik for royalties. The two cases were consolidated for trial and both are before this court at the present time. We are today deciding the quiet title suit by a memorandum opinion. (*Speik* v. *Sutphin*, L. A. No. 16530, *post*, p. 764 [99 Pac. (2d) 656].)

This brings us to a consideration of the issues on this appeal. The lower court decided the case on the theory that the prior judgment was *res judicata*. If this conclusion is

correct, the judgment must be affirmed on that ground alone and it is neither necessary nor proper to reexamine on their merits the various defenses urged by appellant. The prior judgment, as will be seen from an examination of its provisions and of the foregoing excerpts from the findings and conclusions, determined that plaintiff was the owner of 5 per cent of the total production of the two wells. This determination in the prior judgment necessarily establishes plaintiff's right in this action to recover royalties based on subsequent production of wells 3A and 4, unless defendant's attack on the applicability of the doctrine of *res judicata* is successful.

The contentions of defendant in this connection are as follows: (a) The causes of action in the two suits are different, and the judgment in the first is not *res judicata* in the second. (b) The issue of ownership of oil or rights therein produced from state lands by a "whipstock well" was not raised or decided in the first action, and is not *res judicata*. (c) Defendant Speik, after the judgment in the first action, acquired an independent title to the oil from the state lands which he could not have set up in the first action. The defendant argues that the estoppel of a judgment extends only to facts and conditions as they were at the time the judgment was rendered. (d) The language in the prior judgment and in the District Court of Appeal opinion, which would purport to establish a right in such oil, went beyond the issues raised and is surplusage and void. In this connection it is argued that the District Court of Appeal merely affirmed and did not modify the judgment; hence, its opinion cannot enlarge the scope of the judgment.

All of these contentions merely represent different methods of expressing the single defense that the assignment to plaintiff and the prior judgment in his favor were only intended to give to plaintiff a right in oil produced from a particular well or any "substitute therefor" drawing oil from strata directly underlying the leased premises; and that neither was intended, nor could be construed to establish in plaintiff any right to oil drawn through that well or any other well where the oil itself came from strata not underlying these lots.

The argument of defendant is, in substance, an attack upon the findings and judgment in the prior action, the

undoubted purpose of which is to avoid the broad determination of the issues therein made. The assignment upon which plaintiff relies covered the original well number 3 (subsequently destroyed by fire) or any ''substitute therefor''. It was entirely within the issues of the first action for the court to determine whether wells number 3A or 4 or any other wells then on the premises were substitutes for the original and destroyed well number 3. ■ It is clear from an examination of the findings and judgment therein that plaintiff was adjudged in the prior action to be entitled to his percentage of the production of any wells then drilled on the particular premises regardless of where the wells were bottomed, or the source of the oil delivered by them. ■ The suggestion made by defendant that the ''judgment alone should be considered and the findings disregarded if outside the scope of the judgment'' can have no force in view of the settled rule that the findings constitute the decision of the court. The further contention is made that the opinion of the District Court of Appeal upon the prior appeal cannot be looked to for a determination of the rights of the parties herein, because that court merely affirmed and did not modify the judgment. We need not consider this contention for that opinion is not necessary to plaintiff's case. The findings and judgment of the lower court in the prior action are sufficiently broad for plaintiff's present purposes.

As already indicated, defendant's contention that the doctrine of *res judicata* is not applicable here is grounded upon the proposition that the causes of action involved in the prior and present suit are different, and that the defenses that title had been acquired from the state, and that the oil was being taken from lands outside the boundaries of the lots, were not raised in the prior action. A complete answer to this contention may be found in an examination of the scope of the doctrine of *res judicata*, which has been fully considered by this court in recent cases.

■ First, where the causes of action and the parties are the same, a prior judgment is a complete bar in the second action. This is fundamental and is everywhere conceded.

Second, where the causes of action are different but the parties are the same, the doctrine applies so as to render conclusive matters which were decided by the first judgment. As this court said in *Todhunter* v. *Smith*, 219 Cal. 690, 695

[28 Pac. (2d) 916]: "A prior judgment operates as a bar against a second action upon the same cause, but in a later action upon a different claim or cause of action, it operates as an estoppel or conclusive adjudication as to such issues in the second action as were actually litigated and determined in the first action." · In the instant case, for example, the severable installments of royalties due gave rise to separate causes of action; but a determination of a particular issue in the prior action is *res judicata* in the second action. (See also, *Pratt* v. *Vaughn,* 2 Cal. App. (2d) 722 [38 Pac. (2d) 799].)

Next is the question, under what circumstances is a matter to be deemed decided by the prior judgment? Obviously, if it is actually raised by proper pleadings and treated as an issue in the cause, it is conclusively determined by the first judgment. But the rule goes further. If the matter was within the scope of the action, related to the subject-matter and relevant to the issues, so that it *could* have been raised, the judgment is conclusive on it despite the fact that it was not in fact expressly pleaded or otherwise urged. The reason for this is manifest. A party cannot by negligence or design withhold issues and litigate them in consecutive actions. Hence the rule is that the prior judgment is *res judicata* on matters which were raised or could have been raised, on matters litigated or litigable. In *Price* v. *Sixth District,* 201 Cal. 502, 511 [258 Pac. 387], this court said: "But an issue may not be thus split into pieces. If it has been determined in a former action, it is binding notwithstanding the parties litigant may have omitted to urge for or against it matters which, if urged, would have produced an opposite result . . . This principle also operates to demand of a defendant that all of its defenses to the cause of action urged by the plaintiff be asserted under the penalty of forever losing the right to thereafter so urge them." (See, also, *Elm* v. *Suburban Fruit Lands Co.,* 217 Cal. 223 [17 Pac. (2d) 1003]; *Andrews* v. *Reidy,* 7 Cal. (2d) 366, 370 [60 Pac. (2d) 832]; *Minnich* v. *Minnich,* 127 Cal. App. 1 [15 Pac. (2d) 804].)

Defendant relies on *English* v. *English,* 9 Cal. (2d) 358 [70 Pac. (2d) 625]. In that action, plaintiff sued to rescind a separation agreement in which he had promised to pay his wife $200 per month until a total of $10,000 had been

paid. He alleged that the agreement was obtained by fraud and duress. The wife contended that the validity of the agreement had been established by a default judgment in her favor in a suit to recover installments due under the contract, and that the issue was therefore *res judicata*. The court held that although a default judgment is conclusive as to facts necessary to uphold that particular judgment, it is not conclusive in a subsequent suit on a different cause of action against any defenses which defendant has, because the issues raised by these defenses were not tried and cannot be deemed adjudicated. This case states an exception to the normal rule of *res judicata*, limited to default judgments, and has no bearing on the situation before us.

█ It remains only to see whether the defense now raised by defendant, that the wells bottomed on state land, could have been raised in the first action. If so, the defense of *res judicata* applies. The answer seems entirely clear. At the time of the first action, wells number 3A and 4 were drilled and producing. Defendant knew or should have known of the source of the oil therefrom. If the asserted defense has merit, it was as good and available then as now. This being so, it can make no difference whether it was actually pleaded, or whether evidence was introduced thereon or not. We are not impressed by defendant's assertion that he could not have raised the defense in the first action because it would amount to an admission of trespassing on state land. The defense might have been weak, embarrassing, or dangerous to the defendant; and he may have chosen to refrain from presenting it for reasons important to himself; but this can have no present effect upon the conclusiveness of the determination in the plaintiff's favor. When we say that the issue could have been raised, we mean that it was relevant to or within the scope of the action, and not that it was at the time a defense upon which the defendant might prevail.

█ A similar contention of defendant is that he could not set up his right derived from the state because he had not yet obtained it at the time of the first action. This argument might be persuasive if the issue presented here was as to the right to take oil from state land. But that is not the issue here. The issue is whether plaintiff under his assignment was entitled to 5 per cent of the production of

certain wells drilled on certain lots, which production defendant was actually taking and marketing. Whether defendant originally had an absolute or qualified right to such production, whether defendant had to pay the state for that right, or whether, indeed, the wells actually did draw oil from state land (a disputed point), are clearly immaterial matters. Obviously, if the state asserted a paramount right and stopped production, plaintiff would be entitled to nothing, since nothing would be produced. But here defendant did continuously take and sell the oil from the wells in question, and whenever he did, his activities came within the scope of the former judgment. It need hardly be added that his agreement with the state could not give him any right to enter and drill upon the private land here involved. The agreement clearly has no relation to the rights of the plaintiff under the assignment.

It follows therefore from a consideration of the former judgment, in the light of these rules, that plaintiff is entitled to his present judgment without any further consideration of the merits. Accordingly, we have made no attempt to discuss the conflicting evidence on such matters as the purpose of the assignment, the source of the oil, or other points previously determined.

The judgment is affirmed.

Edmonds, J., Carter, J., Curtis, J., Waste, C. J., Wood, J., *pro tem.*, and McComb, J., *pro tem.*, concurred.

A petition for a rehearing was denied on March 29, 1940, and the following opinion then rendered thereon:

THE COURT.—Defendant in his petition for rehearing challenges certain portions of our opinion, which he interprets as meaning that in a second suit on a different cause of action, *any issue* which could have been raised in the first suit is *res judicata* in the second, even though not actually determined in the first. This is not our holding, and the opinion must be read in connection with the facts of this case, and with an understanding of the issue which was, in fact, decided in the former action.

The judgment in that action awarded plaintiff 5 per cent of the total production from the lots in question whether produced from one or more wells. That judgment, cor-

rectly or incorrectly, did not limit the right of plaintiff to production from wells which bottomed under the land. After that judgment became final, plaintiff's right to a portion of the production from those wells was conclusive as between the parties, even in the present suit on a different cause of action, because the basic issue thus decided in the first case is identical with that in the present case. Defendant, in his petition, has again urged that the former judgment cannot be *res judicata* as to the *new issue* of the title to oil from wells bottomed on state land, which title was acquired after the conclusion of the first action. The difficulty with this argument is that the asserted ''new issue'' is not such in fact. Defendant has simply offered another legal theory by which the *same issue* might be differently decided. If he may have a new trial of the issue of right to the production of the oil from these wells because of the new argument that the source of the oil must be considered, then it would seem that in subsequent actions he can raise a ''new issue'' as to the title of A, B, C, or other possible claimants in addition to the state. In short, defendant's contention is that though the prior judgment determined that plaintiff had a right to a specified percentage of the production of oil from any wells on certain land, plaintiff may be compelled to relitigate that right whenever defendant can discover a new theory upon which to attack it. This proposition is without support in principle or authority.

Shenk, J., and Houser, J., did not participate.