[No. C050299. Third Dist. Jan. 17, 2008.]

JOHN J. BURDETTE, Plaintiff and Respondent, v.
CARRIER CORPORATION et al., Defendants and Appellants.

1672

## COUNSEL

Tucker, Ellis & West, Irene C. Keyse-Walker, Lawrence A. Callaghan; Lewis Brisbois Bisgaard & Smith and Claudia J. Robinson for Defendants and Appellants.

Kenyon Yeates, Riegels Campos & Kenyon, Charity Kenyon; and Anthony J. Poidmore for Plaintiff and Respondent.

## OPINION

**BLEASE, J.**—In this defamation action, plaintiff John J. Burdette sued his former employer, Carrier Corporation, and several of Carrier's employees for slanderous statements made by the employees regarding the circumstances surrounding Burdette's resignation from Carrier.

Prior to this action, Carrier brought a diversity action against Burdette in the federal district court seeking to recover money it claimed Burdette owed the company. Burdette filed a cross-claim on July 31, 2000, naming Carrier and Anthony Guzzi, its vice-president of sales, as defendants, alleging inter alia that "[o]n or about December of 1999 through the present [Carrier]," "through GUZZI *and* other unknown employees and agents" disseminated false, slanderous information that Burdette had stolen money from Carrier and had conspired to and wrongfully taken money from Carrier and was generally dishonest in his employment dealings with Carrier, and that such statements injured his reputation and prevented him from maximizing his employment potential. (Italics added.)

The cross-claim was dismissed after the court granted Carrier's motion for summary judgment because "the actual statements at issue were made by Carrier management-level employees in the employment context and are privileged." The day after the date set for the hearing on the motion, Burdette filed documents (the depositions of employees Carnago and Fitzpatrick) he characterized as a supplemental opposition to the submitted summary judgment motion. He stated that "[t]his new evidence clearly shows that rumor

and gossip to the effect that Burdette was stealing was rampant in both the Sacramento and Reno offices of CARRIER." The court denied the request because "[t]o allow Burdette to file additional documents in opposition to summary judgment after the movants filed their reply brief could deny" them "a fair opportunity" to contest the documents. The judgment of dismissal became final on filing and Burdette did not file an appeal.

Burdette filed this action on December 27, 2002, alleging that "on or about December of 1999 through the present," including the period alleged in the dismissed federal action, Carrier Corporation and several of Carrier's employees, including Carnago and Fitzpatrick, disseminated slanderous information essentially tracking the claim in the federal action.

The case was tried before a jury over Carrier's objection that the action was barred by res judicata and the one-year statute of limitations. All but one of the statements tendered in the state action, the statement made to Mike Lotspeich by Fitzpatrick (Fitzpatrick statement), were shown to have been made during the period encompassed by the federal action. The damages evidenced at trial were collectively attributed not only to the Fitzpatrick statement but also to the statements at issue in the federal action. The jury awarded Burdette $1,065,750 in compensatory damages, $3.5 million in punitive damages against Carrier, and $9,000 in punitive damages against Carrier's employee, Edward Fitzpatrick.

At issue is the preclusive effect of a federal judgment in a state court based upon the granting of a summary judgment in the federal action. That tenders two aspects of res judicata, claim preclusion and issue preclusion. They are subject to being confused because the cross-claim against Carrier and the issue decided in the federal action are both predicated upon statements made by Carrier employees during the period covered by the federal cross-claim.

Burdette argues that res judicata does not bar the state action against Carrier, Carnago and Fitzpatrick because the claim, based upon late discovery of the defamatory material, "constitute[s] separate or distinct causes of action that were not placed in issue in the former case." We disagree.

Claim preclusion bars a second action upon the same claim against the same parties litigated to a final judgment in a prior action. A diversity claim resolved in a federal action is subject to the law of res judicata of the state in which the federal court sits. (See *Semtek Int'l Inc. v. Lockheed Martin Corp.* (2001) 531 U.S. 497 [149 L.Ed.2d 32, 121 S.Ct. 1021] (*Semtek*).) In this case it is California. The test of the claim is the cause tendered by the pleadings and resolved on the merits.

A trial on the merits includes a trial in which the plaintiff fails to provide evidence in support of the claim. Res judicata bars the relitigation not only of

claims that were conclusively determined in the first action, but also matter that was within the scope of the action, related to the subject matter, and relevant to the issues so that it could have been raised. (*Sutphin v. Speik* (1940) 15 Cal.2d 195, 202 [99 P.2d 652]; *Merry v. Coast Community College Dist.* (1979) 97 Cal.App.3d 214, 222 [158 Cal.Rptr. 603].) "A party cannot by negligence or design withhold issues and litigate them in consecutive actions. Hence the rule is that the prior judgment is *res judicata* on matters which were raised or could have been raised, on matters litigated or litigable." (*Sutphin v. Speik, supra*, at p. 202.)

The claim tendered in the federal action against Carrier was that it was liable for defamatory statements made by Guzzi and other "unknown" employees during the period stated in the pleading. The court ruled on the merits of the claim as tendered. The federal court denied Burdette the right to produce new evidence of information provided by Carnago and Fitzpatrick during the period covered by the claim and the court found the remaining statements by Guzzi to be privileged.

Thus, claim preclusion operates to bar the claim against Carrier in this action based upon the Carnago and Fitzpatrick statements made during the period covered by the federal claim because they were raised or could have been raised in the federal action. In addition, issue preclusion bars the claim against Fitzpatrick because the issue of defamatory remarks by "other unnamed employees" was tendered by the pleading in the federal action and resolved against Burdette in the summary judgment proceeding. (See *Clemmer v. Hartford Insurance Co.* (1978) 22 Cal.3d 865, 874 [151 Cal.Rptr. 285, 587 P.2d 1098].)

However, this does not extend to the Fitzpatrick statement to Lotspeich made *after* the period covered in the federal action. Each new defamatory statement may be made the basis of a separate cause of action and hence Carrier and Fitzpatrick may be made liable for the statement because it was not within the claim or issue adjudicated in the federal action. However, the damages assessed in this action were cumulatively attributed not only to the Fitzpatrick statement to Lotspeich but also to the Carnago and Fitzpatrick statements made during the period covered in the federal action. Accordingly, the judgment against Carrier and Fitzpatrick arising from the Fitzpatrick statement to Lotspeich must be reversed because the trial court failed to limit the damages to those caused by Fitzpatrick's statement alone.

We shall reverse the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *The Principal Players*

Burdette was hired by Carrier upon his graduation from college in 1995. He was a sales engineer in Salt Lake City for about a year and one-half before relocating to Sacramento in 1997.

Edward Fitzpatrick was one of the owners of an air conditioning business in Reno, Nevada. After the business was acquired by Carrier, Fitzpatrick became the manager of Carrier's Reno office. Fitzpatrick left Carrier in August 2004.

Joan Carnago was the human resource coordinator out of Carrier's Sacramento office. She left Carrier in 2002.

Phil Williams was Burdette's supervisor. Williams began working for Carrier after graduating from college in 1980. He was the area general manager for Northern California and Nevada. Williams left Carrier in September 1999.

At the regional level were James Jensen and Bernie Halterbeck. Jensen was the regional finance manager for the western region. Jensen was hired to fill that position in May 1999, and was still in the position at the time of trial. Halterbeck was Carrier's regional general manager for the western region. He was Williams's supervisor. Carrier fired Halterbeck in January 2000.

Anthony Guzzi was the vice-president and general manager of commercial sales and service in North America for Carrier from June 1998 to December 2000.

### B. *The Events Surrounding the Defamation Claim*

An apparent misunderstanding over Burdette's entitlement to sales commissions coming out of Carrier's Reno branch sparked the defamatory statements at issue. Williams and Halterbeck recruited Burdette to work in Carrier's Sacramento office in 1997. Burdette testified his understanding was that all of the accounts in the Sacramento and Reno territory would be assigned to him. After Burdette found out that Carrier was acquiring Fitzpatrick's Reno company, he became concerned that he would no longer be assigned to all of the Reno accounts. He spoke to Williams about his concerns, and Williams told him not to worry because the Reno branch would be a service branch with no "incentivized" salespeople. An "incentivized" salesperson was one who earned a base salary plus commissions, pursuant to the company formula.

Williams testified that he never told Burdette he was to receive credit for jobs sold through the Reno branch simply because it was his territory. He would receive credit only for specific projects in which he had specific involvement. Williams claimed he never promised Burdette he would be given 100 percent credit on all jobs out of the Reno branch. Williams's understanding was that Burdette would not receive a commission unless he had physically performed some work to help Carrier achieve the sale.

When leads from the Reno area did not go through Burdette for handling, he first tried talking to the people in Reno. When this did not change anything, he got Williams involved, who agreed to discuss the matter with Fitzpatrick in Reno. In 1999, Burdette started keeping track of a number of accounts out of the Reno office to see if they had been credited to him. He discovered they were not, so using a regional password he had learned about when he was in Salt Lake City, he started to enter his identification number on the accounts. However, Carrier's policy was that only the regional finance manager (Jensen) and his assistant had access to the regional password.

In November 1999, Burdette was questioned as to why he was getting all the commissions in the Reno area. Carrier demanded that he pay back the credit he received from the Reno accounts, amounting to over $100,000. In January 2000, Carrier placed Burdette on paid indefinite suspension, meaning he would receive his base salary, but he was not to sell for or represent Carrier in any way. Burdette resigned shortly afterward.

After a couple of months, Burdette was hired by Advanced Microtherm. He worked for Advanced Microtherm for six or seven months before taking a better offer with Norman Wright.

### C. The Defamatory Statements

Burdette asserts that the defamatory statements were made by Fitzpatrick and Carnago. Carnago admitted discussing with Fitzpatrick on one occasion that Burdette had put his sales identification on jobs for which he was not entitled to receive sales credit. They exchanged the opinion that they thought what Burdette had done was dishonest. This occurred sometime after Burdette left Carrier in January 2000. There was evidence that prior to the discussion with Fitzpatrick, Carnago had expressed these views to other Carrier employees as well.

Burdette testified to the effect these slanderous statements had on him. He offered the testimony of James Lazor, the chief executive officer of the Edward B. Ward Company (EB Ward). EB Ward is an independent distributor for Carrier. In December 1999, Carrier announced it would eliminate all of

the commissioned salespeople in the western region, and that EB Ward would be giving job offers to the Carrier salespeople. However, Lazor told Burdette he would not be receiving a job offer until his issue with Carrier was resolved. Burdette testified that when he was at Advanced Microtherm he was less confident because he was confronted by customers who had heard about what had happened at Carrier.

Burdette presented evidence of one incident he alleged to be slanderous, which occurred after the other statements. Fitzpatrick and Mike Lotspeich were on a business lunch in July 2002, when Fitzpatrick called Burdette a thief and a crook and said that he stole from Carrier. Lotspeich was the vice-president of Norman S. Wright Mechanical Equipment, and Burdette's boss at the time. Lotspeich immediately called Burdette and the company president to tell them about the conversation.

D. *The Federal Action*

On June 8, 2000, Carrier filed an action in federal court, alleging Burdette had wrongfully used the regional password to give himself full credit for jobs in which he had limited or no involvement, and seeking the return of $163,351 in wrongfully obtained commissions.

Burdette filed a cross-claim on July 31, 2000, alleging, inter alia, that "[o]n or about December of 1999 through the present," Guzzi, vice-president of sales for Carrier, and Carrier, "through GUZZI *and* other unknown employees and agents," defamed him by claiming he had stolen from Carrier, had wrongfully taken money from Carrier, had conspired with his superiors to wrongfully take money from Carrier, had paid kickbacks to his superiors, and was generally dishonest in his employment dealings with Carrier. (Italics added.)

On January 7, 2002, Carrier filed a motion for summary judgment and a statement of undisputed facts on Burdette's cross-claim, to be heard on February 4, 2002, and points and authorities claiming that Guzzi's statements were entitled to a conditional privilege because they were made to "key co-employees and management of the company itself."

On January 22, 2002, Burdette filed a separate statement of undisputed facts and points and authorities in opposition to summary judgment claiming that Carrier and Guzzi were not entitled to a conditional privilege because their statements were made with malice.

On the day set for the hearing on the motion for summary judgment, February 4, 2002, Burdette filed a motion to continue the hearing to permit

consideration of supplemental evidence on the ground that he had just received the transcript of the depositions of Joan Carnago and Edward Fitzpatrick, which disclosed that Carnago had admitted that she and numerous Carrier employees had exchanged discussions that Burdette was a thief and had improperly taken sales credits from Carrier. The day after the date set for the hearing on the motion, Burdette filed documents he characterized as a supplemental opposition to the submitted summary judgment motion. The supplemental documents indicated that the depositions of Fitzpatrick and Carnago had been set for late November 2001, during the time that discovery was still open. However, because Carrier's attorney was unavailable, Burdette's attorney agreed to postpone the depositions, which were then taken on January 23, 2002. The documents claim that in her deposition, Carnago admitted that she and numerous Carrier employees had discussed that Burdette was allegedly a thief and had improperly taken sales credits from Carrier. Burdette requested the court grant a continuance in ruling on the summary judgment motion so that the deposition testimony of Fitzpatrick and Carnago could be considered by the court in ruling on the motion. The court denied the continuance.

The federal district court granted Carrier's summary judgment motion of Burdette's cross-claim. As to the defamation cross-claim, the court found that "the actual statements at issue were made by Carrier management-level employees in the employment context and are privileged. . . . Furthermore, Burdette failed to produce evidence of malice." Burdette took no appeal from the federal judgment.

### E. *This Proceeding*

Burdette filed this action for defamation on December 27, 2002. He alleged that "on or about December of 1999 through the present," including the period alleged in the federal action, defendants Carnago, Amy Adams, Chris Countryman, Fitzpatrick and Doe defendants had made statements claiming he had stolen from Carrier, had wrongfully taken money from Carrier, had conspired with his superiors to wrongfully take money from Carrier, and that he was generally dishonest in his employment dealings with Carrier. He alleged Carrier had approved and ratified these statements.[1]

Defendants demurred to the complaint on several grounds, including res judicata and the statute of limitations. With respect to the statute of limitations, defendants argued that plaintiff's complaint had been filed a year and one-half after his cross-claim in the federal case, and that the statute of limitations for a defamation cause of action is one year. (Code Civ. Proc.,

---

[1] Burdette dismissed all of the individual defendants except Fitzpatrick at trial.

§ 340, subd. (c).) Burdette countered that each publication is a separate injury and separate tort, and that he was unaware of the publications alleged in this case until January 23, 2002, the date of the Fitzpatrick and Carnago depositions in the federal case.

The trial court overruled the demurrer, stating: "[T]he action is not barred by res judicata. The federal court . . . specifically found that Civil Code 47 applied because 'the actual statements at issue were made by Carrier management-level employees in the employment context and are privileged.' Although the named defendants in both cases are alleged to be employees of defendant Carrier Corporation, defendants offer no basis on which the court might find that the named defendants here are the 'management-level employees' in the federal action. . . . [T]he action is not barred by the one-year statute of limitations of CCP 340. Plaintiff filed his complaint on December 27, 2002. He alleges that he did not learn of the defamation until approximately January 23, 2002. The fact that plaintiff knew Guzzi made statements in 2000 does not mean that plaintiff learned of defendants' statements at that time."

Defendants raised these arguments again in a motion for summary judgment. The trial court denied the motion, finding:

"[Defendants] have not established that the claim for defamation is barred by res judicata. Although [the federal court] found for Carrier on Burdette's defamation claim which was based on the same type of statements alleged herein, Defendant has not established that the federal action based on statements of [Guzzi] and 'other employees' were the same claims that are the subject of this action or that the claims were against the same parties. Plaintiff has submitted evidence that he did not discover the acts of these particular defendants until after his opposition to the federal summary judgment motion was due. . . . Thus, Burdette has submitted evidence that the claims alleged herein are not the same claims that were the subject of the Federal action and that he did not have the opportunity to litigate these claims against Carrier or the individual defendants in the federal action. . . .

". . . [T]here is a triable issue of fact as to the statute of limitations on the claim against Carrier since plaintiff has submitted evidence that the defamatory statements were discovered after defendant's motion for summary judgment in the federal action was filed, which was within one year of the filing of this action."

The jury rendered a verdict in Burdette's favor, awarding him $1,065,750 in compensatory damages, plus $3.5 million in punitive damages against Carrier and $9,000 in punitive damages against Fitzpatrick.

## DISCUSSION

Carrier argues on appeal, as it did at trial, that Burdette's claims are barred by the statute of limitations. We agree that the statute of limitations bars all claims of defamation except Fitzpatrick's statement to Lotspeich, but we find that these claims suffer more fundamentally from the bar of res judicata. Although Carrier raised this issue on demurrer, summary judgment, and motion for judgment notwithstanding the verdict, it did not raise the issue on appeal. We therefore requested supplemental briefing from the parties on this issue.

## I

## Res Judicata

■ The Restatement Second of Judgments describes res judicata as the "limitations on the opportunity in a second action to litigate claims or issues that were litigated, or could have been litigated, in a prior action." (Rest.2d Judgments, ch. 1, Introduction, p. 1.) The limitations fall into the categories of claim preclusion and issue preclusion. (*Ibid.*) "The principle underlying the rule of claim preclusion is that a party who once has had a chance to litigate a claim before an appropriate tribunal usually ought not to have another chance to do so. A related but narrower principle—that one who has actually litigated an issue should not be allowed to relitigate it—underlies the rule of issue preclusion." (*Id.* at p. 6.) Both aspects of res judicata are at play in this action.

### A. *Claim Preclusion*

■ The claim-preclusive effect of the prior federal judgment is determined by California law. In *Semtek, supra,* 531 U.S. at page 499 [149 L.Ed.2d at p. 37], the Supreme Court addressed the question "whether the claim-preclusive effect of a federal judgment dismissing a diversity action on statute-of-limitations grounds is determined by the law of the State in which the federal court sits." (*Ibid.*) The court said that federal common law governs the claim-preclusive effect of a dismissal by a federal court sitting in diversity, and that since state rather than federal substantive law is at issue, there was no need for a uniform federal rule. (*Id.* at p. 508 [149 L.Ed.2d at pp. 42–43].) Thus, the court held the dismissal on the merits was governed by a federal rule that in turn incorporates the state law of claim preclusion. (*Ibid.*)

■ The California Supreme Court has defined the doctrine of claim preclusion as follows: " 'a final judgment, rendered upon the merits by a

court having jurisdiction of the cause, is conclusive of the rights of the parties and those in privity with them, and is a complete bar to a new suit between them on the same cause of action. This is the general doctrine of *res judicata.*'" (*Goddard v. Security Title Ins. & Guar. Co.* (1939) 14 Cal.2d 47, 51 [92 P.2d 804].)

### 1. *Final Judgment*

It is the federal rule that "a judgment once rendered is final for purposes of res judicata until reversed on appeal, modified or set aside in the court of rendition []. [*Calhoun* v. *Franchise Tax Bd.* (1978) 20 Cal.3d 881, 887 [143 Cal.Rptr. 692, 574 P.2d 763].]" (*Agarwal v. Johnson* (1979) 25 Cal.3d 932, 954, fn. 11 [160 Cal.Rptr. 141, 603 P.2d 58], disapproved on another ground in *White v. Ultramar* (1999) 21 Cal.4th 563, 575 [88 Cal.Rptr.2d 19, 981 P.2d 944].) Thus, the federal judgment in Carrier's favor was a final judgment for purposes of claim preclusion until reversed on appeal and Burdette did not take an appeal.

### 2. *On the Merits*

The judgment in the federal case was on the merits because the substance of the claim (whether any Carrier employee, including Guzzi, defamed Burdette during the designated time period) was tried and determined by way of summary judgment. (*Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 77 [99 Cal.Rptr.2d 316, 5 P.3d 874].)

### 3. *Parties and Those in Privity*

Carrier was a party to both actions, thus Burdette's claim for defamation against Carrier based upon statements by Carrier employees during the time period alleged in the federal action is barred. However, the individual employees named as defendants in this action were not parties to the federal action, nor were they in privity with Carrier, as we shall explain. Therefore, the action is not barred against them under the doctrine of claim preclusion, although we shall conclude the issue of their having made defamatory statements was decided in the prior action, and Burdette is collaterally estopped from raising the issue again.

The Restatement Second of Judgments, section 51, describes the instances in which a party may be in privity where one is vicariously responsible for the conduct of the other:

"If two persons have a relationship such that one of them is vicariously responsible for the conduct of the other, and an action is brought by the

injured person against one of them, the judgment in the action has the following preclusive effects against the injured person in a subsequent action against the other.

"(1) A judgment against the injured person that bars him from reasserting his claim against the defendant in the first action extinguishes any claim he has against the other person responsible for the conduct unless:

"(a) The claim asserted in the second action is based upon grounds that could not have been asserted against the defendant in the first action; or

"(b) The judgment in the first action was based on a defense that was personal to the defendant in the first action."

A Maryland Court of Appeals case illustrates the applicability of this rule, and why the application here results in a finding that claim preclusion does not bar the action against the individual employees, other than Guzzi. In *deLeon v. Slear* (1992) 328 Md. 569 [616 A.2d 380], a doctor filed a diversity action in federal court against a hospital and the hospital's head of surgery, alleging defamatory complaints were made against him. (*Id.*, 616 A.2d at p. 382.) The doctor learned during discovery in the federal action that two nurses were the source of the complaints against him, but he did not name either of the nurses in the federal action.[2] (616 A.2d at p. 383.) The federal court granted the defendants' summary judgment motion on the ground, inter alia, that the statements were privileged. (*Ibid.*)

The doctor then brought an action for defamation in state court against the nurses. (*deLeon v. Slear, supra*, 616 A.2d at p. 383.) The nurses defended on the grounds of res judicata, collateral estoppel, and the statute of limitations. (*Id.* at p. 384.) The issue before the Maryland Court of Appeals was whether the doctor's claims were barred by the claim preclusion aspect of res judicata. (*Id.* at p. 385.)

Citing section 51 of the Restatement Second of Judgments, the court held that neither of the exceptions set forth in that section applied. The court held that exception (a) (the claim could not have been asserted in the first action) did not apply because it contemplated allowing a second action only when

---

[2] Although Burdette's federal cross-claim named "Roe" defendants, Burdette never attempted to amend the cross-claim to name the Carrier employees, or if he did it is not a part of this record. There are no charging allegations against the Roe defendants in Burdette's cross-claim, as would be required under California law. While the federal rules do not specifically prohibit the naming of Doe defendants, the use of fictitious defendants is disfavored in federal court. (*Sigurdson v. Del Guerico* (9th Cir. 1956) 241 F.2d 480, 482; *Craig v. United States* (9th Cir. 1969) 413 F.2d 854, 856.)

there was actually an independent claim that could not have been asserted in the first action. (*deLeon v. Slear, supra*, 616 A.2d at pp. 387–388.)

The court further held that exception (b) (the judgment was based on a defense that was personal to the first defendant) was inapplicable, even though the judgment in federal court was based on the defense of privilege. (*deLeon v. Slear, supra*, 616 A.2d at p. 388.) This was because the federal court alternatively based the judgment on other grounds, and because the conditional privilege was applicable to the nurses, as well as the hospital. (*Ibid.*)

In the case before us, the only defense identified by the federal court was privilege, and the privilege arguably would not apply to employee statements if there was not a sufficient common interest in the communications. Thus, the privilege was one Carrier could assert, but its lower level employees might not. Therefore, the doctrine of claim preclusion prevents Burdette from reasserting a claim for defamation against Carrier, but does not prevent the assertion of a defamation claim against Carnago or Fitzpatrick.

### 4. *Same Cause of Action*

Since under *Semtek, supra*, 531 U.S. 497, the measure whether a judgment in a federal diversity action is to be given preclusive effect is determined by the law of the state in which the federal court sits it is the California law that measures the nature of the claim to be given preclusive effect.

■ California adheres to a " 'primary rights' " theory in determining whether the claims or causes of action are the same. (*Agarwal v. Johnson, supra*, 25 Cal.3d at p. 954.) The significant factor is whether the claim or cause of action is for invasion of a single primary right. (*Ibid.*) Whether the same facts are involved in both suits is not conclusive. (*Id.* at pp. 954–955.)

Moreover, more than one act may constitute a single cause of action. Under Pomeroy's primary rights theory, ". . . a cause of action consists of 1) a primary right possessed by the plaintiff, 2) a corresponding primary duty devolving upon the defendant, and 3) a delict or wrong done by the defendant which consists in a breach of such primary right and duty. [Citation.] Thus, two actions constitute a single cause of action if they both affect the same primary right." (*Gamble v. General Foods Corp.* (1991) 229 Cal.App.3d 893, 898 [280 Cal.Rptr. 457]; accord, *Weikel v. TCW Realty Fund II Holding Co.* (1997) 55 Cal.App.4th 1234, 1246 [65 Cal.Rptr.2d 25].)

In *Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co.* (1993) 5 Cal.4th 854 [21 Cal.Rptr.2d 691, 855 P.2d 1263], the Supreme Court explained that more than one wrongful act may constitute a single cause of action. A contractor filed suit against its attorney because the attorney's failure to file a stop notice and failure to file a complaint to foreclose its mechanic's lien resulted in the contractor's inability to collect the amount it was owed on a construction project. (*Id.* at p. 857.) The contractor argued that each of the attorney's omissions was a separate claim or cause of action. The Supreme Court disagreed, explaining:

"Bay Cities had a single injury and thus a single cause of action against its attorney. 'California has consistently applied the "primary rights" theory, under which the invasion of one primary right gives rise to a single cause of action.' [Citations.] Bay Cities had one primary right—the right to be free of negligence by its attorney in connection with the particular debt collection for which he was retained. He allegedly breached that right in two ways, but it nevertheless remained a single right.

▮ "Similarly, '[T]he "cause of action" is based upon the harm suffered, as opposed to the particular theory asserted by the litigant. . . . Even where there are multiple legal theories upon which recovery might be predicated, *one injury* gives rise to only one claim for relief.' [Citation.] Bay Cities suffered a single injury as a result of its attorney's omissions—the inability to collect the amount owed to Bay Cities for its work on the construction project." (*Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co., supra,* 5 Cal.4th at p. 860, fn. omitted.)

Defamation is an injury to reputation. (*Shively v. Bozanich* (2003) 31 Cal.4th 1230, 1242 [7 Cal.Rptr.3d 576, 80 P.3d 676].) The primary right litigated in both the federal action and this action is the right to be free from injury to reputation. The single claim asserted in the federal action, based on the doctrine of respondeat superior, was that Carrier, "through [its vice-president of sales] and other unknown employees and agents," disseminated defamatory statements about Burdette, "[o]n or about December of 1999 through the [date of the cross-claim, July 31, 2000] . . . ." The claim is in the nature of a continuing course of action.[3]

The allegations of the cross-claim and the complaint show the commonality of interest to be protected. Burdette's federal cross-claim was against

---

[3] At oral argument Burdette's attorney characterized the claim at issue here as "a course of conduct that continued after the federal judgment was entered."

named cross-defendants Carrier and Anthony Guzzi, Carrier's vice-president of sales. It also named 20 "Roe" defendants. Burdette's defamation claim alleged the defamatory statements were made by Guzzi and by Carrier "through GUZZI and other unknown employees and agents . . . ." The statements were made from December 1999 through the present. The defamatory statements alleged were that Burdette stole from Carrier, wrongfully took money from Carrier, and conspired with his superiors to wrongfully obtain money from Carrier, wrongfully paid kickbacks to his superiors in return for their assigning certain commissions to him, and that he was generally dishonest in his employment dealings with Carrier. Burdette alleged he suffered loss of reputation, shame, mortification, and hurt feelings as a result of the statements, and that he had been prevented from maximizing his employment potential.

The named defendants in this action are Carrier, Carnago, Fitzpatrick, Amy Coker Adams, and Chris Countryman.[4] The complaint alleges each defendant is the agent and employee of the other, and that they acted within the course of such agency and employment. The statements are alleged to have been made by the named Carrier employees. The statements alleged are that Burdette improperly credited himself for sales commissions to which he was not entitled, stole from Carrier, conspired with his superiors to wrongfully obtain money, falsified expense reports, was dishonest in his employment dealings with Carrier, and was incompetent in his job. The complaint alleged Burdette suffered loss of reputation, shame, mortification, hurt feelings, and has been prevented from maximizing his employment potential.

As stated in *Agarwal*, the significant factor in determining whether the cause of action in the two proceedings is the same is the harm suffered. (*Agarwal v. Johnson, supra*, 25 Cal.3d at p. 954.) As demonstrated by the allegations of damage in the two actions, Burdette alleged he suffered the same harm in both actions. The defamatory statements were about the same incident, Burdette's receipt of commissions to which Carrier claimed he was not entitled. Burdette's claim to recover for this harm was adjudicated in the federal action.

 The defamatory statements Burdette alleges in this complaint (with the exception of the Fitzpatrick statement to Lotspeich) against Carrier were also alleged in the federal cross-claim, namely the statements of unknown employees made during the period covered by the cross-claim. That Burdette named several lower level Carrier employees as defendants in this action, but

---

[4] See footnote 1, *ante*.

not in the prior action, did not create more than one cause of action for purposes of res judicata. The gravamen of the single claim against Carrier was liability in respondeat superior for the statements made by Carrier's employees in the relevant time period. The rule that each defamatory statement may constitute a separate cause of action is not applicable where a single cause of action is predicated upon multiple statements.

■ Section 63 of the Restatement of Judgments explains that a plaintiff may not maintain a subsequent action on the same cause of action, even though the plaintiff presents a different ground for relief in the second action, unless the defendant's fraud or misrepresentation prevented the plaintiff from presenting such ground in the original action. " 'Where an action is brought to recover damages for injury to the person or property of the plaintiff caused by the defendant, and the plaintiff in his complaint alleges certain negligent acts of the defendant, and at the trial he is unable to prove these negligent acts and a verdict and judgment are given for the defendant, the plaintiff is precluded from maintaining a subsequent action based upon the same injury, although in that action he alleges other acts of negligence. There is in such a case a single cause of action, based upon the primary right of the plaintiff to be free from injury to his person or property and a violation by the defendant of that right through his failure to use proper care. The plaintiff is not permitted to maintain successive actions for the same injury by alleging different acts of negligence on the part of the defendant. It is immaterial that in a subsequent action he alleges acts of negligence which he was not permitted to prove in the prior action because they were not alleged in his complaint in that action.' " (*Panos v. Great Western Packing Co.* (1943) 21 Cal.2d 636, 639 [134 P.2d 242], quoting Rest., Judgments, § 63, com. b, p. 259.)

As an example, the Restatement poses the case of A, who sues his employer, B, alleging injury as the result of B supplying defective appliances. A verdict is rendered in B's favor, after which A brings a second action against B for the same injury, alleging the negligence of B's officers and employees in operating the appliances. In such case the first judgment is a bar to the second action. (Rest., Judgments, § 63, com. b, illus. 4, pp. 260–261.)

■ Res judicata precludes Burdette from relitigating against Carrier any alleged defamatory statements made by Carrier employees prior to the filing

of the cross-claim in the federal action. Any such statements were subsumed in the federal court's determination that no Carrier employee made an unprivileged defamatory statement as alleged in the cross-claim.

### B. *Issue Preclusion*

In this action, employees of Carrier were named as defendants who were alluded to only as "unknown employees" in the federal action. As noted above, the action against them is not barred by the doctrine of claim preclusion.

*Semtek, supra,* 531 U.S. 497, did not expressly determine if state or federal laws of issue preclusion apply to an issue decided by a federal court sitting in diversity when the issue is raised again in state court. However, the result under either the California or federal law of issue preclusion would be the same in this case.

■ Under California law, a party is collaterally estopped from relitigating an issue if: "(1) the issue decided in a prior adjudication is identical with that presented in the action in question; *and* (2) there was a final judgment on the merits; *and* (3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication." (*Clemmer v. Hartford Insurance Co., supra,* 22 Cal.3d at p. 874.) The federal law of issue preclusion adds the requirement that the resolution of the issue of law or fact must be essential to the judgment. (*Monarch Life Ins. Co. v. Ropes & Gray* (1st Cir. 1995) 65 F.3d 973, 978.) "The doctrine of collateral estoppel applies on issues litigated even though some factual matters or legal arguments which could have been raised were not." (*Lucas v. County of Los Angeles* (1996) 47 Cal.App.4th 277, 286 [54 Cal.Rptr.2d 655].)

### 1. *Party or in Privity*

■ Burdette was the cross-complainant in the federal action, and is the party against whom Carrier asserts the bar in this action. Both California and federal law allow the defensive use of issue preclusion by a party who was a stranger to the first action. (*Bernhard v. Bank of America* (1942) 19 Cal.2d 807, 812–813 [122 P.2d 892]; *Green v. Ancora-Citronelle Corp.* (9th Cir. 1978) 577 F.2d 1380, 1383–1384.)

## 2. Final Judgment on the Merits

As previously explained, the prior proceeding resulted in a final judgment on the merits when the federal trial court ruled that the statements tendered in the summary judgment proceeding were privileged pursuant to Civil Code section 47, subdivision (c),[5] judgment was entered on the cross-claim, and no appeal was taken.

## 3. Issue Decided

 Determining the issue foreclosed by the prior judgment is one of the most difficult problems in applying the rule of issue preclusion. (Rest.2d Judgments, § 27, com. c, p. 252.) In making this determination, we consider several factors: "Is there a substantial overlap between the evidence or argument to be advanced in the second proceeding and that advanced in the first? Does the new evidence or argument involve application of the same rule of law as that involved in the prior proceeding? Could pretrial preparation and discovery relating to the matter presented in the first action reasonably be expected to have embraced the matter sought to be presented in the second? How closely related are the claims involved in the two proceedings?" (*Ibid.*)

The issue in the prior action was whether Carrier, through "unknown employees and agents" made unprivileged defamatory statements during the period covered that harmed Burdette's reputation. This action differs in that the complaint now names the employees and agents who were previously "unknown." We know that the employees named in this action were the same "unknown" employees alleged to have made defamatory statements in the prior action because Burdette requested a continuance of the summary judgment hearing in the prior action to allow the court to consider the deposition testimony of Carnago and Fitzpatrick, and particularly the fact that Carnago "admit[ted] that she and numerous CARRIER employees, including other salespersons, and filing clerks, exchanged discussions regarding the fact that defendant/cross-complainant Burdette was allegedly a thief and had improperly taken sales credits from CARRIER."

 As a practical matter, Carrier, a corporation, is incapable of committing slander, except through one of its employees. "[A] corporation . . . may act only through its officers, agents, and employees." (*Norman v. Department of Real Estate* (1979) 93 Cal.App.3d 768, 774 [155 Cal.Rptr. 715].) Thus,

---

[5] Civil Code section 47, subdivision (c) makes privileged, "a communication, without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the motive for the communication to be innocent, or (3) who is requested by the person interested to give the information."

even without the inclusion of the unknown employees as Roe defendants, the federal cross-complaint necessarily included the claim that individual employees were responsible for the defamation. Both actions alleged that employees of Carrier defamed Burdette, and both sought to hold Carrier responsible for the defamatory statements.

The pretrial preparation and discovery in the first action reasonably could have been expected to have embraced the matter Burdette seeks to present in this action. The claims against the various employees in this action were raised by the pleadings in the federal action. The federal action named "Roe" defendants, indicating Burdette would seek to hold unknown defamers liable when their identities were discovered. Additionally, the federal action alleged the defamatory statements were made by unknown employees of Carrier. In fact, the identities of the individuals named as defendants in this action were discovered in the prior action, but Burdette did not amend his cross-claim to add those employees as cross-defendants.

 " '[T]he prior determination of an issue is conclusive in a subsequent suit between the same parties as to that issue and every matter which might have been urged to sustain or defeat its determination.' [Citations.] [¶] . . . In other words, a party may not be permitted to introduce new or different evidence to relitigate a factual issue which was presented and determined in a former action. However, the particular legal or factual issue must have been presented and determined in the former action in order for the doctrine to apply." (*Bleeck v. State Board of Optometry* (1971) 18 Cal.App.3d 415, 428 [95 Cal.Rptr. 860].)

This is a matter of pleading. "[I]f [the issue] is actually raised by proper pleadings and treated as an issue in the cause, it is conclusively determined by the first judgment." (*Sutphin v. Speik, supra*, 15 Cal.2d at p. 202.)

In a motion for summary judgment, the issues are framed by the pleadings and the other material offered by the parties on the motion. (*Flint ex rel. Flint v. KY Dept. of Corrections* (6th Cir. 2001) 270 F.3d 340, 348; for Cal. see *FPI Development, Inc. v. Nakashima* (1991) 231 Cal.App.3d 367, 381–383 [282 Cal.Rptr. 508].) The parties have not provided this court with all of the materials offered in the federal summary judgment. However, we know that the cross-claim alleged that, "[o]n or about December of 1999 through the present, cross-defendant GUZZI and cross-defendant CARRIER CORPORATION, through GUZZI and other unknown employees and agents, disseminated information to others . . . ." Carrier's motion for summary judgment set forth facts in support of its defense that only Guzzi made statements to other management-level employees about Burdette, and that these statements were either absolutely or qualifiedly privileged. In response to this, Burdette did not

present evidence that someone other than Guzzi made defamatory statements, but argued Guzzi's statements were not privileged because they either had no objective relationship to litigation or because they were made with malice.

### 4. *Essential to the Judgment*

 The federal court ruled that any statements were privileged because they were made by Carrier management-level employees in the employment context and there was no evidence of malice. This brings us to the federal requirement that the issue be necessary to the judgment. In the federal case, the court necessarily found no evidence of defamation by Fitzpatrick or Carnago, because such statements were not made by management-level employees in the employment context and were not privileged. The federal court found these were the only types of statements made by Carrier employees. Thus, one issue decided in the federal case was that no Carrier employee disseminated unprivileged defamatory statements about Burdette, "[o]n or about December of 1999 through the [date of the cross-complaint, July 31, 2000] . . . ." Burdette now seeks to relitigate this issue by presenting evidence that other employees not covered by a privilege also disseminated defamatory statements. However, the issue preclusion aspect of res judicata prevents him from doing so. "[W]hen plaintiff 'elected to try his case on one theory of liability, he was barred from again trying it upon another ground.' " (*Panos v. Great Western Packing Co.*, *supra*, 21 Cal.2d at p. 639.) Burdette, having tried his federal claim on the ground of a continuing course of defamations, cannot now piece off the individual defamatory statements as individual claims of defamation.

## II

## Statute of Limitations

As a preliminary matter, we reject Burdette's claim that defendants abandoned their statute of limitations defense when they pursued a theory that the defamation never happened and Burdette was actually a thief.

Defendants raised the defense of the statute of limitations on demurrer, in a summary judgment motion, in a motion for nonsuit, and by way of a proposed jury instruction that was not given. Each time, the trial court ruled against defendants.

The statute of limitations defense was not inconsistent with the other defenses, and the issue having been raised numerous times below it has been preserved for appeal. (*Boyle v. CertainTeed Corp.* (2006) 137 Cal.App.4th 645, 649 [40 Cal.Rptr.3d 501].)

## A. *Statements More than One Year Before Complaint*

The trial court's rationale, asserted by Burdette on appeal, was that Burdette's discovery in January 2002 of the statements made by Fitzpatrick and Carnago delayed the accrual of Burdette's cause of action against those defendants until the date of the discovery. Burdette also argues that his cause of action did not accrue until he suffered injury, and he alleged the defamation was ongoing.

■ In some cases, the accrual of a cause of action in tort is delayed until the plaintiff discovers, or should have discovered, the factual basis for the claim. (*Shively v. Bozanich, supra,* 31 Cal.4th at p. 1248.) The discovery rule has been applied in cases of libel where the defamatory statement is hidden from view and the plaintiff has no access to or cause to seek access to the statement, such as where a statement is hidden in a personnel file that cannot be inspected by the plaintiff. (*Id.* at p. 1249.)

The statements at issue here, made in casual conversation, do not appear to fall within the discovery exception. Our research revealed only one case, *McNair v. Worldwide Church of God* (1987) 197 Cal.App.3d 363, 379–380 [242 Cal.Rptr. 823], in which the court associated a slanderous statement (as opposed to libel) with the discovery rule, and in that case the court merely assumed the discovery rule would apply to the slander in question without analysis.

■ However, assuming the discovery rule applies to cases of slander, we nevertheless conclude that under the discovery rule, Burdette's claim for the defamatory comments made prior to the commencement of his federal action accrued as of the time he filed the federal action. The discovery rule would delay the accrual of the cause of action not to the date Burdette found out about the statements Fitzpatrick and Carnago made about him, but to the date he discovered or should have discovered a factual basis for his defamation claim. (*Shively v. Bozanich, supra,* 31 Cal.4th at p. 1248.) This means, " 'the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her.' [Citation.]" (*Bernson v. Browning-Ferris Industries* (1994) 7 Cal.4th 926, 932 [30 Cal.Rptr.2d 440, 873 P.2d 613].) It is not necessary that the plaintiff know the exact manner in which the injuries were effected. (*Ibid.*)

Discovery of the cause of action for defamation must have occurred by the time Burdette filed the cross-claim in his federal action alleging that Carrier, through "unknown employees and agents, disseminated information to others claiming that [Burdette] had stolen from [Carrier], had wrongfully taken

money from [Carrier], and conspired with his superiors to wrongfully obtain money from [Carrier], had wrongfully paid 'kick-backs' to his superiors in return for their assigning to him certain commissions and incentive payments and that [Burdette] was generally dishonest in his employment dealings with [Carrier]."

The fact that a plaintiff does not know the identity of each and every defendant who has caused the harm, does not toll the running of the statute of limitations. (*Bernson v. Browning-Ferris Industries, supra,* 7 Cal.4th at p. 932.) The identity of the defendant is not an element of the cause of action. (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 399 [87 Cal.Rptr.2d 453, 981 P.2d 79].) Once a plaintiff is aware of the injury, the limitations period is presumed to afford sufficient opportunity to discover the identity of all the defendants. (*Bernson v. Browning-Ferris Industries, supra,* 7 Cal.4th at p. 932.)

Accordingly, the statute of limitations is an alternative ground for our holding as to those defamatory statements made prior to the filing of the federal cross-claim in January. Burdette had "discovered" such causes of action as of the date the cross-claim was filed on July 31, 2000. Since the evidence presented indicated the defamatory statements discovered during the federal case actually occurred two to three years after Burdette started working for the Sacramento office in March 1997, those statements occurred prior to the filing of the cross-claim on July 31, 2000. Any action for recovery based on such statements is time-barred.

Burdette's arguments that his cause of action did not accrue until he suffered injury and he alleged ongoing defamation do not alter our conclusion. The type of slander alleged here was slander per se because it tended directly to injure plaintiff in respect to his business by imputing something that has a natural tendency to lessen its profits. (*Mann v. Quality Old Time Service, Inc.* (2004) 120 Cal.App.4th 90, 106–107 [15 Cal.Rptr.3d 215].) Damages are presumed so that a cause of action is conclusively established from the false and unprivileged utterance constituting slander per se. (*Clark v. McClurg* (1932) 215 Cal. 279, 284 [9 P.2d 505].) Additionally, Burdette testified he became aware of the harm when he began working for Advanced Microtherm in the spring of 2000, before he filed his federal cross-claim in July of that year.

B. *Statements Made Within One Year of the Complaint*

The trial court allowed Burdette to present evidence of one defamatory statement that Burdette could not have raised in the federal action because it

did not occur until after the trial in the federal case. This was the statement Fitzpatrick made to Lotspeich on July 23, 2002. Carrier argues this defamatory statement was not included within the scope of Burdette's complaint. We disagree.

The complaint alleged that "on or after December of 1999 through the present," named defendants, including Fitzpatrick "disseminated and published" false and unprivileged statements. It also alleged the statute of limitations had not run on Burdette's claims because he had no knowledge of "the publications of said false information by these named individual defendants until on or about January 23, 2002 . . . ."

The Fitzpatrick statement to Lotspeich did not occur until July 2002, and necessarily could not have been included in the allegations regarding late discovery. However, the allegations regarding discovery are directed to the statute of limitations, and did not limit the otherwise broad allegation that the complaint included all statements made until the filing of the complaint. Thus, the statement to Lotspeich, which occurred within one year of the filing of the complaint, was not barred by the statute of limitations.

III

Admission of Lotspeich Testimony

Carrier argues Lotspeich's testimony nevertheless should not have been allowed because Burdette did not disclose Lotspeich as a witness. Carrier made an Evidence Code section 402 motion after Burdette informed Carrier it intended to call Lotspeich as a witness. The trial court allowed Carrier to examine Lotspeich to discover his intended testimony. Following Lotspeich's testimony, Carrier objected, contending Lotspeich's name had not been disclosed in Burdette's interrogatory answers as a witness. The trial court treated Carrier's motion as a motion to exclude Lotspeich's testimony, and denied it.

We will not disturb the trial court's determination that there has been no willful failure to disclose a witness's identity unless it was arbitrary or lacking in evidentiary support. (*Grimshaw v. Ford Motor Co.* (1981) 119 Cal.App.3d 757, 782 [174 Cal.Rptr. 348]; *Rangel v. Graybar Electric Co.* (1977) 70 Cal.App.3d 943, 948 [139 Cal.Rptr. 191].)

Even though Burdette did not include Lotspeich's name in his interrogatory response, he did give Lotspeich's name during his deposition as a person who heard defamatory statements. Carrier did not ask any followup questions

regarding Lotspeich. On this record the court did not abuse its discretion in allowing Lotspeich to testify.

## IV

## Prejudice

Reversal is required both because the jury may have based its verdict of liability on statements that were not actionable, and because of the prejudicial effect of the evidence admitted regarding claims that were barred by res judicata and the statute of limitations.[6]

The only actionable statement is Fitzpatrick's statement to Lotspeich, which occurred in July 2002. However, most of Burdette's evidence regarding damages related to the effect the rumors had on him before and during the time he worked for Advanced Microtherm. Burdette left Advanced Microtherm in 2000, well before the Fitzpatrick statement in 2002.

Burdette testified that he lost confidence when some of his customers confronted him about the incident with Carrier. His trial counsel argued this loss of confidence affected his ability as a salesman. The customers Burdette named were Steve Humeson, Clint Studebaker, Bob Gardener, and Bill Petty. The incidents occurred between March and September of 2000, before the actionable Fitzpatrick statement in 2002. Burdette also mentioned having to defend himself to people he worked for at Advanced Microtherm. These were Steve Thomas, John Karamanos, and Bill Carmody. Lotspeich testified the comments Fitzpatrick made to him had not negatively affected his relationship with Burdette, that he was not aware of any adverse action taken against Burdette as a result of the statements, and that he was not aware of any sales Burdette had lost because of the statements.

Burdette testified that he suffered from depression during the federal trial, but although he felt some anxiety, he felt no depression after he heard about the statement to Lotspeich. Since the Fitzpatrick statement could not have caused most of the damages that the trial court allowed into evidence, reversal is required.[7]

---

[6] Because we reverse the judgment, we do not consider Carrier's additional arguments that there was insufficient evidence Carrier ratified Fitzpatrick's statements, that the jury instructions and verdict forms regarding ratification were erroneous, or that the litigation privilege protected the statements between Fitzpatrick and Carnago.

[7] Certain questions have been tendered regarding the admissibility of evidence for the purposes of obtaining punitive damages. We leave that question to the determination of the trial court on retrial.

## DISPOSITION

The judgment is reversed. Defendants shall recover their costs on appeal.

Scotland, P. J., and Cantil-Kakauye, J., concurred.

A petition for a rehearing was denied February 14, 2008, and the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied April 9, 2008, S161225.