Filed 1/31/14  Nopuente v. Choy CA1/5

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| **ISABELITA NOPUENTE,**<br><br>    **Cross-complainant and Appellant,**<br><br>      v.<br><br>**NANCY CHOY et al.,**<br><br>    **Cross-defendants and Respondents.** | **A135162**<br><br>**(Alameda County<br>Super. Ct. No. RG04180582)** |

    Isabelita Nopuente (Nopuente) appeals from the judgment entered in favor of respondents[1] on her cross-complaint following the trial court's grant of respondents' summary judgment motion and its denial of Nopuente's motion for leave to amend her cross-complaint.  We affirm, concluding that Nopuente's claims against respondents are barred by the res judicata doctrine and the trial court did not err in denying Nopuente's motion for leave to amend.

---

[1]  Respondents are cross-defendants Nancy Choy; Matthew Choy; the Nancy Wu Living Trust; the Tony Choy Living Trust; the Matthew Choy Living Trust; the Choy Family Trust; Nish, a limited partnership; OB1 Ltd.; OB1 Trust I; OB1 Trust II; Choy & Associates; Excel Financial; and Interstate Financial Corporation (collectively, respondents).

1

BACKGROUND[2]

In November 2003, Nopuente initiated an arbitration proceeding before the National Association of Securities Dealers, Inc. (the NASD proceeding), against Tony Choy (Choy), H.D. Vest, and others. Nopuente's "Statement of Claim" alleged that Choy, as her securities broker, improperly managed Nopuente's investments and converted them to his own use. She alleged that Choy was an agent of H.D. Vest and that H.D. Vest failed to supervise Choy properly. Nopuente filed a "Preliminary Memorandum of Law in Support of Statement of Claim" that described her various theories of liability, including negligence, breach of contract, fraud, breach of fiduciary duty, unfair business practices, and violation of the Consumers Legal Remedies Act (CLRA; Civ. Code, § 1750 et seq.). A number of those causes of action are also listed in a March 2004 claim submission agreement. In October 2004 and August 2005, Nopuente filed amended claims that included allegations similar to those in the original statement of claim. Choy's answers in the NASD proceeding alleged that Nopuente authorized and actively pursued speculative and high risk investments, which was the cause of her investment losses.

In October 2004, Choy filed a complaint against Nopuente in the Superior Court for the County of Alameda. Choy alleged he provided Nopuente accounting services and opened an investment account in her name. As part of the investment strategy, Choy and Nopuente were appointed directors of OB1, Ltd. Choy alleged that Nopuente wrongfully depleted funds from OB1, Ltd., from another company (Interstate Financial Corp.), and from an account with Wallstreet Electronica, Inc. Choy's complaint alleged causes of action against Nopuente for intentional misrepresentation, negligent misrepresentation, "actual" fraud, "constructive" fraud, misappropriation, conversion of partnership assets,

---

[2]   This background is largely taken from this court's unpublished decision in *Choy v. Nopuente* (Jan. 28, 2011, A126779) (*Choy I*). We grant respondents' March 18, 2013 request that we take judicial notice of this unpublished decision (*Fink v. Shemtov* (2010) 180 Cal.App.4th 1160, 1171), and we deny the remainder of respondents' request because the other materials are unnecessary to our analysis.

2

conversion, breach of partnership agreement, breach of fiduciary duty, and damage to reputation.

In December 2004, Nopuente filed a cross-complaint against Choy and others alleging that Choy induced her to invest over $1 million from an inheritance, and most of those funds were lost due to investments made by Choy or other wrongdoing by Choy.

In November 2005, Nopuente filed a motion to stay the trial court action pending resolution of the NASD proceeding. Over Choy's opposition, the court stayed the action until April 2006 "in light of the fact that resolution of the issues to be arbitrated may likely affect the issues to be determined in the instant action."

In March 2007, Nopuente filed her first amended and operative cross-complaint (FACC) against Choy and other cross-defendants, including the cross-defendants that are the respondents in the present case, as well as Wallstreet Electronica, Inc., and H.D. Vest. She alleged causes of action for money had and received, breach of fiduciary duty, conversion, fraud, negligent misrepresentation, negligence, breach of oral and written contracts, breach of the implied covenant of good faith and fair dealing, unjust enrichment, conspiracy, imposition of a constructive trust, declaratory relief, and an accounting. Generally speaking, Nopuente alleged that Choy represented and advised her in various financial transactions that resulted in substantial losses, and the other cross-defendants were involved with Choy in the transactions.

In May and June 2007, respectively, Wallstreet Electronica, Inc., and H.D. Vest filed petitions to compel arbitration of the FACC. Over Nopuente's objections, the trial court granted the petitions. The court ordered Nopuente to submit to the ongoing NASD proceeding "all of her claims and causes of action" against Wallstreet Electronica, Inc., and H.D. Vest, and the court stayed the civil action as to them. Subsequently, the court stayed the action "in its entirety pending completion of the arbitration."[3]

In April 2009, the NASD arbitration panel (the Panel) issued its decision in the NASD proceeding. The Panel stated that during the arbitration Nopuente specified her

[3]  In December 2008, Nopuente dismissed her claims against Wallstreet Electronica, Inc.

3

claims were based on the following causes of action: money had and received, breach of fiduciary duty, conversion, fraud, negligent misrepresentation, negligence, breach of oral contract, breach of written contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, conspiracy, and violation of the CLRA. The Panel ruled against Nopuente, finding that she "did not prove any of the claims and/or causes of action asserted against" H.D. Vest and Choy. The Panel also found "that the material portions of . . . Nopuente's testimony regarding her claims . . . were not creditable." The Panel ruled "that neither of the Claimants[, Nopuente and OB1, Ltd.,] shall receive any relief, and all claims by Claimants are denied in their entirety."

In July 2009, Nopuente filed a petition to vacate the arbitration award. H.D. Vest opposed the petition and requested confirmation of the arbitration award. In August 2009, the court denied the petition, granted the request to confirm the award, and entered judgment denying recovery from H.D. Vest and Choy (Choy Judgment). Nopuente appealed and in January 2011 this court affirmed in *Choy I*. This court held that the Panel's exclusion of evidence related to two real estate transactions that funded Nopuente's investments did not substantially prejudice her rights; the Panel did not err in failing to grant her an accounting; and the Panel did not refuse to exercise jurisdiction over the claims in the FACC.

In October 2009, after entry of the Choy Judgment but before this court's decision in *Choy I*, respondents moved for summary judgment on the FACC. Respondents relied on the doctrine of res judicata, arguing that, because their only alleged liability in the FACC was derivative of Choy's liability, they too were entitled to judgment in their favor. In February 2012, after this court's decision in *Choy I* was final, the trial court granted respondents' motion for summary judgment. The court reasoned that the confirmed arbitration award in favor of Choy was entitled to res judicata effect, barring relitigation of the causes of action in the FACC. Because respondents' liability was derivative of Choy's liability, respondents were entitled to a judgment of dismissal. The trial court also denied Nopuente's September 2011 motion to amend the FACC. The court entered judgment in favor of respondents and this appeal followed.

4

DISCUSSION

I. *The Res Judicata Doctrine Bars Nopuente's Claims Against Respondents*

Nopuente argues the trial court erred in concluding the doctrine of res judicata bars her claims against respondents in the FACC. We review de novo to determine whether the party moving for summary judgment has met its burden of proving that there is no triable issue as to any material fact and that the moving party is entitled to judgment as a matter of law. (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476.)

"Res judicata prohibits the relitigation of claims and issues which have already been adjudicated in an earlier proceeding. The doctrine has two components. ' "In its primary aspect the doctrine of res judicata [or 'claim preclusion'] operates as a bar to the maintenance of a second suit between the same parties on the same cause of action." . . . The secondary aspect is "collateral estoppel" or "issue preclusion," which does not bar a second action but "precludes a party to an action from relitigating in a second proceeding matters litigated and determined in a prior proceeding." ' [Citations.]" (*Kelly v. Vons Companies, Inc*. (1998) 67 Cal.App.4th 1329, 1335; see also *Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 828 (*Vandenberg*).)

The elements of res judicata in its claim preclusion form are (1) the claim in the present action must be identical to a claim litigated or that could have been litigated in a prior proceeding; (2) the prior proceeding resulted in a final judgment on the merits; and (3) the party against whom the doctrine is being asserted was a party or in privy with a party to the prior proceeding. (*Bernhard v. Bank of America* (1942) 19 Cal.2d 807, 813; see also *Brinton v. Bankers Pension Services, Inc.* (1999) 76 Cal.App.4th 550, 556 (*Brinton*).) Although res judicata is usually applied based on a prior judicial decision, a prior judgment confirming an arbitration award may also bar a subsequent claim based on the same cause of action. (See Code Civ. Proc., § 1287.4; *Richard B. LeVine, Inc. v. Higashi* (2005) 131 Cal.App.4th 566, 576-579 (*LeVine*); *Brinton*, *supra*, 76 Cal.App.4th at pp. 556-558; *Thibodeau v. Crum* (1992) 4 Cal.App.4th 749, 755; *Sartor v. Superior*

*Court* (1982) 136 Cal.App.3d 322, 328 (*Sartor*).)[4] "A predictable doctrine of res judicata benefits both the parties and the courts because it 'seeks to curtail multiple litigation causing vexation and expense to the *parties* and wasted effort and expense in *judicial administration.*' [Citation.]" (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 897; see also *Vandenberg*, *supra*, 21 Cal.4th at p. 829 [the purpose of the res judicata doctrine is "to preserve the integrity of the judicial system, promote judicial economy, and protect litigants from harassment by vexatious litigation"].)

In the present case, Nopuente does not dispute the third element required for application of res judicata—that she was a party to the NASD proceeding. As to the first element, Nopuente disputes that the claims in the FACC are identical to those addressed in the NASD proceeding. It is undisputed the claims resolved in the Choy Judgment, which confirmed the arbitration award, are the same claims on which respondents sought summary judgment—that is, respondents sought summary judgment on the same FACC on which Choy obtained judgment. (*Burdette v. Carrier Corp.* (2008) 158 Cal.App.4th 1668, 1674 (*Burdette*) ["Claim preclusion bars a second action upon the same claim against the same parties litigated to a final judgment in a prior action. . . . The test of the claim is the cause tendered by the pleadings and resolved on the merits."].) Moreover, Nopuente does not dispute that the allegations against respondents in the FACC involve the same invasions of primary rights as the allegations against Choy. (*LeVine*, *supra*, 131 Cal.App.4th at pp. 575-576, 579; *Brinton*, *supra*, 76 Cal.App.4th at p. 557.)

Nevertheless, Nopuente argues her claims against respondents are not barred by res judicata because the Panel did not have jurisdiction over all the claims in the FACC

---

**4** A prior judgment confirming an arbitration award has limited applicability to bar subsequent litigation under the issue preclusion doctrine of collateral estoppel because it may not be invoked by a stranger to the arbitration unless the parties to the arbitration intended or agreed the arbitrator's decision could be raised by strangers to the arbitration. (*Vandenberg*, *supra*, 21 Cal.4th at pp. 834, 837-838; see also *Brinton*, *supra*, 76 Cal.App.4th at pp. 556-557.) However, no such limitation applies to the claim preclusion aspect of the res judicata doctrine. (*Benasra v. Mitchell Silberberg & Knupp* (2002) 96 Cal.App.4th 96, 107-108; *LeVine*, *supra*, 131 Cal.App.4th at pp. 577-578; *Brinton*, at pp. 556-557.)

and the claims actually considered by the Panel did not encompass all the primary rights implicated by the causes of action in the FACC. However, it is too late for Nopuente to challenge the scope of the Choy Judgment, which confirmed the Panel award, resolving in Choy's favor on the merits all of the claims against him in the FACC. Nopuente's challenge to the Choy Judgment was heard and rejected by this court in *Choy I*. Among other things, in *Choy I* we concluded the Panel took jurisdiction over the claims in the FACC. As we explained in *Choy I*, the Panel listed causes of action identified by Nopuente, which were largely the same as those in the FACC and in her memorandum of law in support of her arbitration claims; the Panel concluded she "did not prove" those claims. (See *Burdette, supra,* 158 Cal.App.4th at pp. 1674-1675 ["A trial on the merits includes a trial in which the plaintiff fails to provide evidence in support of the claim. Res judicata bars the relitigation not only of claims that were conclusively determined in the first action, but also matter that was within the scope of the action, related to the subject matter, and relevant to the issues so that it could have been raised."].) Nopuente presents no authority supporting the proposition that, in applying the res judicata doctrine, this court can disregard the claims actually resolved in the Choy Judgment and reconsider the validity of the judgment, despite the fact that Nopuente already had a full opportunity to challenge the judgment in her previous appeal.[5]

As to the second element, Nopuente contends the Choy Judgment is not a final judgment that can be given res judicata effect because " ' "There can be but one final judgment in an action . . . ." ' " (*Bank of America v. Superior Court* (1942) 20 Cal.2d 697, 701-702.) However, the Choy Judgment *did* " ' "finally determine[] the rights" ' " of Choy and H.D. Vest in relation to the FACC (*id.* at p. 701); Nopuente appealed and this court affirmed the judgment. Although claims in the FACC remained unresolved as to other cross-defendants, that did not undermine the finality of the Choy Judgment. (See

---

[5]   Nopuente contends that giving res judicata effect to the Choy Judgment deprives her of her right to procedural due process because it denies her a jury trial on the FACC and, effectively, the claims in Choy's complaint. However, Nopuente already had an opportunity to challenge the validity of the Choy Judgment; any consequences that flow from that final judgment do not constitute a deprivation of procedural due process.

7

*Morehart v. County of Santa Barbara* (1994) 7 Cal.4th 725, 740 [referring to rule that "[j]udgment in a multiparty case determining all issues as to one or more parties may be treated as final even though issues remain to be resolved between other parties"]; see also *Millsap v. Federal Express Corp.* (1991) 227 Cal.App.3d 425, 430.) Nopuente cites no authority supporting the proposition that the judgment could only be treated as final for res judicata purposes following resolution of the claims against the other cross-defendants. Because Nopuente has failed to support her contention with reasoned argument and relevant citations to authority, the issue requires no further consideration. (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785 (*Badie*).)

Nopuente also asserts the res judicata doctrine is inapplicable because "there is no 'second action,' " but her argument on the point relates to the purported absence of a final judgment. Any argument that the NASD proceeding is not sufficiently separate for purposes of the res judicata doctrine has been forfeited. (*Badie*, *supra*, 67 Cal.App.4th at pp. 784-785.) In any event, the procedural posture in the present case is nearly identical to that in *Sartor*, where homeowners sued an architectural firm and its employees. (*Sartor*, *supra*, 136 Cal.App.3d at p. 324.) The claims against the firm were sent to arbitration and the action was stayed. (*Id.* at p. 325.) The result of the arbitration was favorable to the firm and subsequently the individual employees moved for summary judgment on res judicata grounds. (*Id.* at p. 325.)[6] The Court of Appeal held the trial court should have granted the motion because the employees could not be liable if the firm was not liable. (*Id.* at p. 328; see also *Vandenberg*, *supra*, 21 Cal.4th at p. 824, fn. 2 [citing *Sartor* with approval].)

Nopuente argues respondents waived the defense of res judicata because they did not assert it in their answers. Code of Civil Procedure section 1908.5 provides that, "When a judgment or order of a court is conclusive, the judgment or order must be

---

[6]  Although *Sartor* elsewhere suggested the employees' defense was based on "collateral estoppel" (*Sartor*, *supra*, 136 Cal.App.3d at pp. 327-328), *Vandenberg* characterized *Sartor* as a case involving the claim preclusion aspect of the res judicata doctrine. (*Vandenberg*, *supra*, 21 Cal.4th at p. 824, fn. 2; see also *LeVine*, *supra*, 131 Cal.App.4th at pp. 577-578.)

alleged in the pleadings if there be an opportunity to do so; if there be no such opportunity, the judgment or order may be used as evidence." That language has been interpreted as requiring a defendant to plead the defense of res judicata, "if there be an opportunity to do so." (*Solari v. Atlas-Universal Service, Inc.* (1963) 215 Cal.App.2d 587, 592 [discussing Code Civ. Proc., former § 1962, subd. 6, now Code Civ. Proc., § 1908.5]; see also *Hulsey v. Koehler* (1990) 218 Cal.App.3d 1150, 1158.) In the present case, respondents' answers were filed before entry of the Choy Judgment and, indeed, respondents' motion for summary judgment asserting the res judicata defense was filed before the Choy Judgment became final on appeal. Nopuente fails to explain how respondents had an opportunity to plead the defense. Under these circumstances, it was proper to use the Choy Judgment as evidence to support respondents' motion for summary judgment. (Code Civ. Proc., § 1908.5.)

Nopuente contends the trial court erred in granting respondents' motion for summary judgment because several of the cross-defendants, the three OB1 entities, and Interstate Financial Corporation, were not properly represented by respondents' counsel. In particular, she argues that control over the OB1 entities and Interstate Financial Corporation is disputed and respondents' counsel is disqualified from representing those entities because of a conflict of interest. She also argues that Interstate Financial Corporation is an unregistered corporation lacking capacity to sue.[7] However, Nopuente cites to nothing in the record showing that she moved to disqualify respondents' counsel from representing either of the entities. (See *People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1144-1145.) Absent such a motion, respondents' counsel had authority to file the motion for summary judgment on

---

[7]   Nopuente cites to Choy's complaint, which alleges that Interstate Financial Corporation is "a Nevada corporation not authorized to do business in California." Nopuente cites no authority that such a corporation lacks capacity to defend an action. Instead, she cites authority regarding "suspended" corporations (*Traub Co. v. Coffee Break Service, Inc.* (1967) 66 Cal.2d 368, 371) and dissolved corporations (*Macmillan Petroleum Corp. v. Griffin* (1950) 99 Cal.App.2d 523, 528), as well as Corporations Code sections 2105 and 2203, which sections do not directly address the situation in the present case. Accordingly, she has not shown the trial court erred.

9

behalf of the OB1 entities and Interstate Financial Corporation, and Nopuente fails to cite any authority that her assertions about the scope of respondents' counsel's representation demonstrate the trial court erred in granting the motion for summary judgment.

Nopuente's remaining contentions may be addressed briefly. Respondents did not bear the burden of presenting additional evidence demonstrating that all the claims covered by the judgment were actually litigated in the NASD proceeding, because the trial court could properly rely on the Choy Judgment in determining the scope of the claims resolved therein. The fact that the trial court had previously overruled demurrers to the FACC did not preclude the grant of summary judgment because Nopuente has failed to show those prior rulings necessarily reflected a conclusion respondents' liability in the FACC was not merely derivative.[8] Finally, Nopuente's reliance on the proposition from criminal law that the acquittal of an accomplice does not bar the conviction of another is unavailing. In the present case, Choy is the principal alleged actor; if his conduct was not actionable, there is no basis to hold respondents liable. (*LeVine, supra*, 131 Cal.App.4th at p. 573 ["summary judgment was properly granted because [the defendant's] liability is dependent upon the commission of an underlying tort by [a medical partnership] and its partners, a claim decided adversely to [the] plaintiff in the prior arbitration"]; *Brinton, supra*, 76 Cal.App.4th at pp. 557-558 ["since defendant's liability is merely derivative . . . , it is unnecessary for [the] defendant to have been a party to the prior action to assert a claim preclusion defense in this case"]; see also *LeVine*, at pp. 574-576; *Sartor, supra*, 136 Cal.App.3d at p. 328.)

---

**8** Nopuente argues for the first time in her reply brief that the allegations in the FACC provide a nonderivative basis for the liability of the respondents. We do not consider arguments presented for the first time on reply. (*Loranger v. Jones* (2010) 184 Cal.App.4th 847, 858, fn. 9.) In any event, Nopuente's list of allegations, lacking any analysis of how the allegations support her causes of action, is insufficient to demonstrate the trial court erred.

10

II. *The Trial Court Did Not Abuse Its Discretion in Denying Leave to Amend*

Nopuente contends the trial court abused its discretion (*Melican v. Regents of University of California* (2007) 151 Cal.App.4th 168 (*Melican*)) in denying her request for leave to amend the FACC to include new causes of action.

" ' "[T]he trial court has wide discretion in allowing the amendment of any pleading [citations], [and] as a matter of policy the ruling of the trial court in such matters will be upheld unless a manifest or gross abuse of discretion is shown. [Citations.]" ' [Citation.] Nevertheless, it is also true that courts generally should permit amendment to the complaint at any stage of the proceedings, up to and including trial. [Citations.] But this policy applies ' "only '[w]here no prejudice is shown to the adverse party.' " ' [Citation.] Moreover, ' " 'even if a good amendment is proposed in proper form, unwarranted delay in presenting it may—of itself—be a valid reason for denial.' " ' [Citations.] Thus, appellate courts are less likely to find an abuse of discretion where, for example, the proposed amendment is ' "offered after long unexplained delay . . . or where there is a lack of diligence . . . ." ' [Citation.]" (*Melican*, *supra*, 151 Cal.App.4th at p. 175.)

Here, nearly seven years passed between the filing of Nopuente's original cross-complaint in December 2004 and the September 2011 request to file a second amended cross-complaint. Nopuente explains that her proposed new causes of action for violations under the Racketeer Influenced and Corrupt Organizations Act (RICO; 18 U.S.C. § 1961 et seq.) and the unfair competition law (UCL; Bus. & Prof. Code, § 17200 et seq.) are based on misconduct occurring *after* the filing of the FACC. But the FACC was filed in March 2007; Nopuente does not explain why she could not have sought to amend the pleading at some point in the four and one-half years between then and September 2011. As in *Melican*, "[I]t would be patently unfair to allow [Nopuente] to defeat [respondents'] summary judgment motion by allowing [her] to present a 'moving target' unbounded by the pleadings." (*Melican*, *supra*, 151 Cal.App.4th at p. 176; see also *Huff v. Wilkins* (2006) 138 Cal.App.4th 732, 746.) The trial court did not abuse its discretion in denying Nopuente's request for leave to amend.

11

Nopuente also argues the trial court was required under Code of Civil Procedure section 426.50 to permit her to amend the FACC. That section provides that, absent bad faith, a court "shall" allow a party to amend a compulsory cross-complaint to assert a cause of action related to the causes of action in the complaint.[9] (See *Silver Organizations Ltd. v. Frank* (1990) 217 Cal.App.3d 94, 98-102.) A " '[r]elated cause of action' means a cause of action which arises out of the same transaction, occurrence, or series of transactions or occurrences as the cause of action which the plaintiff alleges in his complaint." (Code Civ. Proc., § 426.10, subd. (c).) Nopuente fails to explain how the section applies to her proposed new causes of action for RICO and UCL violations. She asserts that those proposed causes of action are based on misconduct occurring *after* the filing of the FACC, so it appears they do not arise out of the same transactions at issue in the complaint. (See *Al Holding Co. v. O'Brien & Hicks, Inc.* (1999) 75 Cal.App.4th 1310, 1313-1314 ["The critical time period to which [Code of Civil Procedure] section 426.30 looks is that point in time when the complaint has been filed and served against a defendant and the defendant 'fails to allege in a cross-complaint any related cause of action which (at the time of serving his answer to the complaint) he has against the plaintiff.' "], italics omitted.) Nopuente fails to cite to any authority that her new claims are within the scope of Code of Civil Procedure section 426.50; thus, she fails to show the trial court erred in denying her request for leave to amend under that statutory provision.

---

[9] Code of Civil Procedure section 426.50 provides: "A party who fails to plead a cause of action subject to the requirements of this article, whether through oversight, inadvertence, mistake, neglect, or other cause, may apply to the court for leave to amend his pleading, or to file a cross-complaint, to assert such cause at any time during the course of the action. The court, after notice to the adverse party, shall grant, upon such terms as may be just to the parties, leave to amend the pleading, or to file the cross-complaint, to assert such cause if the party who failed to plead the cause acted in good faith. This subdivision shall be liberally construed to avoid forfeiture of causes of action."

## DISPOSITION

The trial court's judgment is affirmed.  Costs on appeal are awarded to respondents.

_____
SIMONS, J.

We concur.


_____
JONES, P.J.


_____
BRUINIERS, J.