Filed 1/26/23  Shetty v. Ameriquest Mortgage Co. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| NIKI-ALEXANDER SHETTY et al., | B315537 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. 20STCV38255) |
| v. | |
| AMERIQUEST MORTGAGE COMPANY et al., | |
| Defendants and Respondents. | |

APPEAL from the order of the Superior Court of Los Angeles County, Laura A. Seigle, Judge.  Affirmed.

Law Office of Richard L. Antognini and Richard L. Antognini for Plaintiffs and Appellants.

Buchalter and Pooya E. Sohi for Defendant and Respondent Ameriquest Mortgage Company.

Bryan Cave Leighton Paisner, Alexandra C. Whitworth, and Jasdeep S. Atwal for Defendant and Respondent Citi Residential Lending, Inc.

Houser, Robert W. Norman, Jr., Emilie K. Edling, and Neil J. Cooper for Defendants and Respondents Litton Loan Servicing LP, Ocwen Financial Services, Inc., PHH Mortgage Corporation, Individually and as Successor to Ocwen Loan Servicing LLC, and Deutsche Bank National Trust Company, as Trustee for Ameriquest Mortgage Securities, Inc., Asset-Backed Pass-Through Certificates, Series 2004-FR1.

\* \* \* \* \* \*

In litigation in 2009, 2012, and 2013, a husband or wife unsuccessfully challenged the validity of a 2004 loan and deed of trust on their residential property. In 2020, they brought a lawsuit to invalidate the same 2004 loan and deed of trust. Alas, the fourth time is not the charm. The trial court dismissed the 2020 lawsuit as barred by res judicata. This was undoubtedly correct, so we affirm.

### FACTS AND PROCEDURAL BACKGROUND

I. **Facts**

A. *Residential property and initial loans*

In 1996, Satish Shetty (husband) acquired a residential property on La Barca Drive in Tarzana, California (the property). Husband's name is on the grant deed.

In 1998, husband borrowed $500,000 from Ameriquest Mortgage Company; the loan was secured by a deed of trust against the property.

In 1999, husband refinanced the mortgage by acquiring a $500,000 loan from Ocwen Financial Services, Inc. and using a portion of the loan's proceeds to pay off the prior, Ameriquest loan. The Ocwen loan was secured by a deed of trust against the property.

In 2003, husband paid off the Ocwen loan in full.

**B.     *The 2004 Ameriquest loan***

In February 2004, Ameriquest "contacted" and "pursued" Adina Zaharescu (wife) to get her to refinance the property. By this time, husband had signed a deed quitclaiming the property to La Barca Irrevocable Trust, and named wife as the "trustee." Also at this time, husband was in federal prison after pleading guilty to bank fraud and money laundering charges.[1] Wife transferred the property to herself as an individual, and on the same day took out a $600,000 loan from Ameriquest (the 2004 loan). The loan was secured by a deed of trust on the property.

Husband and wife assert that the 2004 loan was the product of an unspecified "fraudulent representation."

The loan servicer for the 2004 loan changed over time: From 2004 to 2005, it was Ameriquest Mortgage Servicing, Inc.; from 2005 to 2006, it was Ameriquest Special Servicing; and from 2006 to 2008, it was Citi Residential Lending, Inc.

---

[1]     Although husband alleges that his convictions were overturned in 2011, an unpublished district court case summarizing the proceedings in Shetty's criminal case shows that allegation to be false. (*United States v. Shetty* (C.D.Cal. Dec. 11, 2014, No. SACV 07-0427-DOC) 2014 U.S.Dist. Lexis 197548.)

3

## C.    *Attempts to foreclose on the property*

In 2007, after husband was released from prison, he changed his name to Niki-Alexander Shetty and also told wife to stop making payments on the 2004 loan.

In 2009, Ameriquest assigned the 2004 loan to Deutsche Bank National Trust Company, as the trustee for a securitized fund (Deutsche Bank).  Despite the assignment, however, the loan servicer remained the same:  From 2008 through 2012, it was Litton Loan Servicing LP, which is a wholly owned subsidiary of the Ocwen Financial Corporation.  In 2012, Ocwen Loan Servicing, LLC took over as the loan servicer.

Due to wife's refusal to make any further payments on the 2004 loan, Deutsche Bank sought to foreclose on the property by fixing nonjudicial foreclosure sale dates for April 16, 2009, July 5, 2011, and February 14, 2012.

Wife thwarted each attempt to foreclose by filing for bankruptcy—on April 15, 2009, July 1, 2011, and February 13, 2012.  Husband also filed for bankruptcy on February 8, 2013.

## D.    *Parallel litigation*

### 1.    *2009 federal lawsuit*

In April 2009, and as pertinent here, wife filed a lawsuit in federal court (specifically, the Central District of California) against, among others, Deutsche Bank, Litton Loan Servicing LP, and Ameriquest Mortgage Company (the 2009 federal lawsuit).  The lawsuit alleged claims for (1) cancellation of written instruments, (2) fraud, (3) declaratory relief, (4) injunctive relief, (5) rescission, (6) violations of the federal Truth in Lending Act, (7) quiet title, and (8) violations of the federal Real Estate Settlement Procedures Act (RESPA).  At the core of the lawsuit

4

were the "material misrepresentations of fact [made] to [wife] . . . to induce her to enter into" the 2004 loan.

After two rounds of dismissals with leave to amend, the federal court in November 2009 dismissed with prejudice all of the claims except the RESPA claim; the court ruled that wife's fraud and declaratory relief claims were untimely. In March 2010, the court dismissed the RESPA claim with prejudice.

The 2009 federal lawsuit became final after wife voluntarily dismissed her appeal to the Ninth Circuit Court of Appeals in March 2010, and did not thereafter seek a further appeal.

2. *2012 adversarial proceeding in bankruptcy*

As part of wife's third bankruptcy, wife in July 2012 filed an adversarial proceeding against, among others, (1) Deutsche Bank, (2) Ameriquest Mortgage Company, (3) Ameriquest Mortgage Securities, Inc., (4) Litton Loan Servicing LP, and (5) Ocwen Loan Servicing, LLC (the 2012 adversarial proceeding). Wife's complaint alleged claims for (1) declaratory relief, (2) negligence, (3) unjust enrichment, and (4) violations of Title 15, United States Code, section 1692. The basis for the adversarial proceeding was the invalidity of the 2004 loan.

In November 2012, the bankruptcy court dismissed the adversarial complaint on res judicata grounds as duplicative of the 2009 lawsuit.

The 2012 adversarial proceeding became final in April 2015 after the federal district court and Ninth Circuit affirmed the bankruptcy court's ruling.

3. *2013 adversarial proceeding in bankruptcy*

As part of wife's third bankruptcy, husband in February 2013 filed an adversarial proceeding against, among others, (1)

5

wife, in her capacity as trustee of the La Barca Irrevocable Trust, (2) Deutsche Bank, (3) Ameriquest Mortgage Company, (4) Ameriquest Mortgage Securities, Inc., (5) Litton Loan Servicing, LP, (6) Ocwen Financial Services, Inc., and (7) Ocwen Loan Servicing, LLC (2013 adversarial proceeding). As part of the 65-page, 277-paragraph complaint, husband alleged that defendants had "intentionally and deceptively induced [wife] without intent to fund the purported [2004] loan transaction to sign and execute the loan documents and transfer title to herself in order to facilitate the purported loan refinancing transaction"; alleged that the 2004 loan "d[oes] not exist," and sought $12 million in damages.

In August 2013, the bankruptcy court dismissed the adversarial complaint on res judicata grounds as duplicative of the 2009 lawsuit.

The 2013 adversarial proceeding became final in September 2017 after the federal district court affirmed the bankruptcy court's ruling and the Ninth Circuit dismissed husband's appeal as improper. The Ninth Circuit also declared husband to be a "vexatious litigant."

E. *2018 loan modification*

In 2018, Deutsche Bank offered wife the opportunity to modify the 2004 loan in order to remain current on her payments. In December 2018, wife signed the loan modification. From 2018 until October 2020, the 2004 loan as modified by the 2018 modification was serviced by PHH Mortgage Services, which in 2019 merged with Ocwen Loan Servicing, LLC to become PHH Mortgage Corporation.

6

## II. Procedural Background

### A. *Pleadings*

In October 2020, husband and wife (collectively, plaintiffs) sued (1) several Ameriquest entities—namely, (a) Ameriquest Mortgage Company, (b) Ameriquest Mortgage Servicing, Inc., and (c) Ameriquest Special Servicing, (2) Citi Residential Lending, Inc., and (3) several other entities—namely, (a) Litton Loan Servicing LP, (b) Ocwen Financial Services, Inc., (c) Ocwen Loan Servicing, LLC, (d) PHH Mortgage Services, and (e) Deutsche Bank. Collectively, all three groups are referred to as "defendants."

In the operative first amended complaint, plaintiffs alleged that (1) defendants violated California's unfair competition law (Bus. & Prof. Code, § 17200 et seq.) because (a) the 2004 loan was fraudulent, unfair, and unlawful, as wife had been "deceived" into signing the loan documents and had no authority to do so, and (b) the 2018 loan modification was "illegal, deceptive, or unfair *because it was based on the illegal, unfair, and deceptive . . . 2004 promissory note and deed of trust*" (italics added), (2) plaintiffs were entitled to a declaratory judgment that defendants had violated the unfair competition law, and (3) defendant had violated the Rosenthal Act (Civ. Code, § 1788 et seq.) because the "2004 loan [had been] based on deceptive statements." Plaintiffs sought equitable relief barring enforcement of the 2004 loan, the 2004 deed of trust, and the 2018 loan modification.

### B. *Demurrer*

All three groups of defendants demurred to the first amended complaint. After receiving a late-filed opposition, receiving replies from each group of defendants, and entertaining oral argument, the trial court issued an order sustaining the

demurrers without leave to amend.  Specifically, the court ruled that (1) the current lawsuit was barred by res judicata because (a) it was "based on the same primary right" as the claims brought in the now-final 2009 federal lawsuit and 2012 adversarial proceeding—namely, the "right to be free from the allegedly illegal 2004 loan and the damages caused by that loan," and (b) all three lawsuits involved the same parties or their privities, and (2) the current lawsuit was filed outside the applicable statutes of limitations.  The court rejected plaintiffs' argument that the current lawsuit's allegations regarding the 2018 loan modification made res judicata inapplicable because, as the court noted, the operative complaint makes clear that "[t]he claim based on the 2018 [loan] modification wholly depends on the claim that the 2004 loan was illegal," which was the same primary right previously adjudicated in the 2009 federal lawsuit and 2012 adversarial proceeding.

### C.    Appeal

After the entry of judgment, plaintiffs filed this timely appeal.

## DISCUSSION

Plaintiffs argue that the trial court erred in sustaining defendants' demurrers without leave to amend.  In assessing whether the trial court erred in this ruling, we ask two questions: "(1) Was the demurrer properly sustained; and (2) Was leave to amend properly denied?"  (*Shaeffer v. Califia Farms, LLC* (2020) 44 Cal.App.5th 1125, 1134 (*Shaeffer*).)  In answering the first question, "we ask whether the operative complaint "'states facts sufficient to constitute a cause of action'" [citation] and, if it does, whether that complaint nevertheless "'disclose[s] some defense or bar to recovery.'""  (*California Dept. of Tax & Fee Administration*

8

*v. Superior Court* (2020) 48 Cal.App.5th 922, 929 (*Tax & Fee Administration*).) Res judicata is a bar to recovery that may be adjudicated on demurrer. (*Brosterhous v. State Bar* (1995) 12 Cal.4th 315, 324.) "In undertaking the inquiry, we accept as true all """"material facts properly pleaded""""" and consider any materials properly subject to judicial notice." (*Tax & Fee Administration*, at p. 929.) In answering the second question, we ask """whether ""there is a reasonable possibility that the defect [in the operative complaint] can be cured by amendment.""""" (*Shaeffer*, at p. 1134.) We review the trial court's ruling regarding the first question de novo, and review its ruling regarding the second for an abuse of discretion. (*People ex rel. Harris v. Pac Anchor Transportation, Inc.* (2014) 59 Cal.4th 772, 777; *Branick v. Downey Savings & Loan Assn.* (2006) 39 Cal.4th 235, 242.)

**I.     Was the Demurrer Properly Sustained?**

The doctrine of res judicata bars claims that were or could have been litigated in a prior case from being *relitigated* in a new case. (*Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 92-93.) A claim is barred by res judicata if it involves (1) the same cause of action (2) between the same parties or their privities (3) after a final judgment on the merits in a prior proceeding. (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824; *People v. Barragan* (2004) 32 Cal.4th 236, 252-253.) Res judicata applies even if the litigant (or its privity) in the prior proceeding was self-represented (e.g., *Iwachiw v. N.Y. City Board of Educ.* (E.D.N.Y. 2002) 194 F.Supp. 2d 194, 202; see also *Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246-1247), and even if the prior litigation was terminated at the pleadings stage (*Pollock v. University of Southern California* (2003) 112 Cal.App.4th 1416,

1427-1428). Where, as here, the claims in the current case are grounded in California law and the claims in the prior cases are grounded in California law, we look to the California law of res judicata—even if the prior litigation occurred in federal court. (*Gamble v. General Foods Corp.* (1991) 229 Cal.App.3d 893, 898; *Balasubramanian v. San Diego Community College Dist.* (2000) 80 Cal.App.4th 977, 991; *Burdette v. Carrier Corp.* (2008) 158 Cal.App.4th 1668, 1681-1682; *Hardy v. America's Best Home Loans* (2014) 232 Cal.App.4th 795, 805-806.)[2] We accordingly examine the three elements of res judicata under California law.

**A.** ***Does this lawsuit involve "the same cause of action" as the prior three lawsuits?***

In assessing whether the same cause of action is involved in the current lawsuit and in prior lawsuits, California follows the primary rights theory. (*Boeken v. Philip Morris USA, Inc.* (2010) 48 Cal.4th 788, 797 (*Boeken*).) This theory provides that

---

[2] Even if we looked to the federal law of res judicata, the outcome would be the same. In assessing whether a claim can be relitigated, federal courts examine "(1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts." (*Costantini v. Trans World Airlines* (9th Cir. 1982) 681 F.2d 1199, 1201-1202.) Because these factors are largely designed to ferret out whether the same right is at issue in the prior and current litigation, courts have found "little difference" between the federal and California law of res judicata when it comes to assessing whether the same right is at issue. (*Butcher v. Truck Ins. Exchange* (2000) 77 Cal.App.4th 1442, 1460, fn. 16.)

"'"one injury gives rise to only one claim for relief"'" (*id.* at p. 798), and accordingly prohibits a plaintiff from suing twice to vindicate the same primary right (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 904). A "'primary right is simply the plaintiff's right to be free from the particular injury suffered.'" (*Ibid.*) As a general matter, "the same primary right" is at stake "[w]hen two actions involving the same parties [or their privities] seek [redress] for the same harm." (*Boeken,* at p. 798.) Because a primary right turns on the right to be free from a particular injury suffered, a primary right is *not* defined by the legal theory asserted or by the remedy sought. (*Cal Sierra Development, Inc. v. George Reed, Inc.* (2017) 14 Cal.App.5th 663, 676-678; *Crowley v. Katleman* (1994) 8 Cal.4th 666, 681.)

Plaintiffs' current lawsuit involves the same primary right as the 2009 federal lawsuit, the 2012 adversarial proceeding, and the 2013 adversarial proceeding. The three prior proceedings all rested on husband's and wife's purported right to be free from the obligations imposed by the 2004 loan and deed of trust due to fraud. (Accord, *Estate of Dito* (2011) 198 Cal.App.4th 791, 804 [noting plaintiff's "primary right . . . to remain free from . . . fraud"].) As plaintiffs have admitted time and again, the current lawsuit rests on the very same primary right to be free from the allegedly fraudulent 2004 loan: Plaintiffs' operative complaint alleges that defendants' conduct violates the unfair competition law due to the "illegal, unfair, and deceptive . . . 2004 promissory note and deed of trust"; plaintiff's opposition to the demurrers frankly acknowledges that "[t]he core of the [operative] complaint is that Ameriquest originated a fraudulent loan in 2004"; and plaintiff's opening brief on appeal likewise asserts that the "core"

11

of the operative complaint is that "Ameriquest originated a fraudulent loan in 2004."

Plaintiffs' sole response is that their current lawsuit *also* involves the 2018 loan modification, which occurred *after* the prior three lawsuits and, in their view, thus cannot involve the same primary right. For support, they cite *Favila v. Pasquarella* (2021) 65 Cal.App.5th 934 (*Favila*). To be sure, a lawsuit based upon improper acts associated with the 2018 loan modification would likely not involve the same primary right. (Accord, *id.*, at pp. 940-941, 945-947 [conduct to evade debt collection after prior lawsuits is not barred by those prior lawsuits].) But plaintiffs here do not allege any wrongdoing with respect to the 2018 loan modification. Instead, as noted above, the *sole* viable ground on which they attack the 2018 loan modification is, in plaintiffs' own words, "because it was based on the illegal, unfair, and deceptive . . . 2004 promissory note and deed of trust."[3] Contrary to what plaintiffs suggest, the mere fact that the 2018 loan modification happened *after* the prior lawsuits does not mean their current

_____

[3]     Although plaintiffs also allege that the 2018 loan modification is "unfair" because they "signed the modification under duress and coercion because that was the only way they could prevent a non-judicial foreclosure," this allegation is not actionable as a matter of law. *Nearly all* loan modifications are signed by homeowners who face the threat of a loss of their homes; if that economic pressure were sufficient to make a lender's offer of a loan modification "unfair" and hence actionable in court, then every loan modification between the same parties or their privities would be unlawful. That is most certainly not the law. At oral argument, plaintiff argued that the 2018 loan modification was wrongful because the underlying 2004 loan that was fraudulent, but this argument means that the 2018 loan modification is not independently wrongful.

12

lawsuit rests on a different primary right. On plaintiffs' logic, a plaintiff whose challenge to a prior mortgage was rejected in a final judgment could evade the res judicata bar merely by engaging in the act of making another payment on that mortgage. This would all but eviscerate the doctrine of res judicata.

**B.** ***Does this lawsuit involve the same parties or their privities as the prior lawsuits?***

Many of the parties to the prior lawsuits are also parties to the current lawsuit. On the plaintiff's side, wife was a party to the 2009 federal lawsuit and the 2012 adversarial proceeding, husband was a party to the 2013 adversarial proceeding, and husband and wife are both parties to the current lawsuit. On the defendant's side, Ameriquest Mortgage Company was a party to all three prior proceedings; Litton Loan Servicing LP was a party to all three prior lawsuits; Ocwen Financial Services was a party to the 2013 adversarial proceeding; Ocwen Loan Servicing, LLC was a party to the 2012 adversarial proceeding and the 2013 adversarial proceeding; and Deutsch Bank was a party to all three prior proceedings. These particular defendants are also parties to the current lawsuit.

That leaves a handful of defendants who are named in this lawsuit, but who were not parties to any of the prior three lawsuits. Those defendants are Ameriquest Mortgage Servicing, Inc., Ameriquest Special Servicing, Citi Residential Lending, Inc., and PHH Mortgage Services. But each of those defendants is in privity with the parties to the prior lawsuits. For purposes of res judicata, a nonparty to a prior lawsuit is a "privity" of a party to that prior lawsuit—and hence potentially bound by the prior lawsuit's ruling—if the nonparty and party "'share[] "an identity

13

or community of interest'""—that is, if they share "'an interest so similar . . . that the party [to the prior lawsuit] acted as the nonparty's ""virtual representative"" in the [prior] action.'" (*Grande v. Eisenhower Medical Center* (2022) 13 Cal.5th 313, 326.) All four of the defendants here who were not parties to the prior litigation acted as the loan servicer for the 2004 loan; because Ameriquest Mortgage Company, Litton Loan Servicing LP, and Ocwen Loan Servicing, LLC, were also servicers, and because all of the servicers have such similar interests that they acted as virtual representatives of the nonparty defendants, privity exists. Indeed, plaintiffs do not argue to the contrary.

### C. *Did the prior lawsuits end in final judgments?*

Plaintiffs concede that the 2009 federal lawsuit and the 2012 adversarial proceeding have now reached final judgments. Although plaintiffs allege that the 2013 adversarial proceeding is not final, the judicially noticed documents definitively show that this allegation is false and that this proceeding is also final. (*Genis v. Schainbaum* (2021) 66 Cal.App.5th 1007, 1015 ["Where facts appearing in . . . judicially noticed documents . . . are inconsistent with[] the complaint's allegations, we must rely on the facts in the . . . judicially noticed documents."]) Thus, all three prior proceedings are final judgments.

\*       \*       \*

Because the demurrers were properly sustained on the basis of res judicata, we have no occasion to consider whether they might also be sustained as time barred by the applicable statutes of limitations.

## II. Was Leave to Amend Properly Denied?

In their briefing on appeal, plaintiffs seek leave to amend to add that defendants were "debt collectors" under the Rosenthal

14

Act and to make specific allegations against Citi Residential Lending, Inc.  Because these proposed allegations do not address the res judicata bar, and because we see no other way to plead around this bar, there is no "reasonable possibility" that the defect in the operative complaint can be cured by amendment. Consequently, the trial court did not abuse its discretion in denying leave to amend.

## DISPOSITION

The judgment is affirmed.  Defendants are entitled to their costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
HOFFSTADT


We concur:


_____, Acting P. J.
CHAVEZ


_____, J.*
BENKE

---

\*      Retired Associate Justice of the Court of Appeal, Fourth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.